684 A.2d 1331

SYCAMORE REALTY CO., INC.

v.

PEOPLE'S COUNSEL OF BALTIMORE COUNTY, Relay
Improvement Association, Louisa Vanderbeek,
Herbert Plitt and John Heinrichs.

No. 130, Sept. Term, 1995.

Court of Appeals of Maryland.

Nov. 21, 1996.

Thomas M. Wood, IV (Jeffrey T. Bubier, Neuberger, Quinn, Gielen, Rubin & Gibber, on brief, Baltimore; Edward C. Covahey, Jr., Anthony J. DiPaula, Covahey and Boozer, P.A., on brief) Baltimore, for Petitioner.

Peter Max Zimmerman, People's Counsel for Baltimore County; (Carole S. DeMilio, Deputy People's Counsel, J. Carroll Holzer, Holzer and Lee, all on brief) Towson, for Respondent.

Argued before MURPHY,* C.J. and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL, and RAKER, JJ.

CHASANOW, Judge.

In this case, we are called upon to decide whether Baltimore County should be estopped from enforcing a new zoning scheme, enacted during the County's quadrennial rezoning process, against a property owner whose property was under reservation for potential acquisition by the County at the time it was downzoned. For the following reasons we hold that the County should not be estopped.

---

* Murphy, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court, after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and the adoption of the opinion.

## I.

The facts in this case are simply stated. Petitioner, Sycamore Realty Co., Inc., is the owner of Hilltop Place, a 24.37 acre parcel of land in Baltimore County. On December 4, 1990, Petitioner filed a development plan with the Baltimore County Review Group (the "CRG") seeking permission to erect a 220–unit townhome complex on the site. At the time the development plan was filed, 18.21 acres of the site were zoned density residential (DR) 10.5, and 6.16 acres of the site were zoned DR 5.5. The 220–unit townhome complex would have been compatible with this zoning scheme.

Obtaining the approval of the CRG was only the first requirement that Petitioner had to fulfill in order to begin its project. Petitioner would then have had to apply for and receive a building permit authorizing Petitioner to proceed with the project. A site planning and engineering expert estimated that, in the usual course of events, it takes up to 3 months to obtain CRG approval, and approximately 12 months for a project to move from CRG approval to the beginning of construction.

This project, however, did not proceed in the usual fashion. On July 1, 1991, while the CRG was considering the merits of Petitioner's development plan, the Baltimore County Council reserved the 24.37 acre parcel, pursuant to Baltimore County Code § 26–66, for potential future acquisition by the Baltimore County Department of Recreation and Parks. Section 26–66 allows the County to reserve property for up to eighteen months for potential acquisition or condemnation. Baltimore County Code § 26–66(b), (c), (g) (1988). No structure may be erected on the property while it is under reservation. Baltimore County Code § 26–66(e). If, at the end of the reservation period, the property has not been acquired, or if condemnation proceedings have not been instituted, § 26–66 allows any aggrieved person to recover "actual damages sustained ... by reason of the ... reservation, together with reasonable attorney's fees and expert witness fees as may be approved by the court." Baltimore County Code § 26–66(h).

It is undisputed that Baltimore County followed all the proper procedures concerning the reservation of the property,[1] and that Petitioner's taxes were abated throughout the reservation period pursuant to Baltimore County Code § 26–66(f). During the time that the property was under reservation, Petitioner did not ever request that the property be released, perhaps, in part, because of the abatement of taxes.

Even before the property was reserved, representatives of Baltimore County had been engaged in negotiations with Petitioner to purchase the parcel. Two independent appraisers, working on the County's behalf, valued the land at $560,000. Representatives of Baltimore County made one offer to purchase the land at that price. Petitioner's asking price for the property, however, was between $4,000,000 and $8,000,000. No agreement was ever reached concerning the sale of the parcel, partly because the parties disagreed on the price, and partly because representatives of Baltimore County learned that they could not afford to purchase the parcel, even at the price of $560,000. By December 31, 1991, representatives of Baltimore County knew that they would not be able to acquire the property. Nevertheless, the property was not released from reservation until November 19, 1992, nearly a year later.

On October 15, 1992, while the property was still under reservation, the parcel was downzoned to entirely DR 5.5 as a result of Baltimore County's quadrennial, county-wide rezoning process.[2] The 198–unit[3] townhome complex that Petition-

---

1. No one has raised a constitutional challenge to Baltimore County Code § 26–66 suggesting that it works a taking without providing just compensation. Section 26–66 allows for the recovery of damages caused by the reservation. Baltimore County Code § 26–66(h) (1988). Apparently the Baltimore County Council believes that the provision for damages would make the statute constitutional.

2. Four years have passed since this dispute began, and on October 8, 1996, Baltimore County completed another county-wide review of its zoning. Petitioner requested that the County Council rezone 16.8 acres of Hilltop Place to DR 10.5. The County Council, however, accepted

3. See note 3 on page 61.

er wished to build was not compatible with this zoning scheme. The new zoning, which went into effect December 1, 1992, would allow Petitioner to construct only a 132–unit complex on the parcel.

The CRG approved Petitioner's development plan on July 8, 1993. Although the approval was granted more than eight months after the new, lower density scheme became effective, the CRG approved the Petitioner's plan under the higher density zoning scheme that had been in effect during 1990. The CRG's approval was based on a letter from Arnold Jablon, the Director of Zoning Administration and Development Management. The letter, dated December 3, 1992, stated that Petitioner "had been prejudiced by the County's use of the reservation process and subsequent rezoning," and that Petitioner should be allowed to proceed under the higher density, 1990 zoning scheme for an additional eighteen months.

The People's Counsel of Baltimore County ("People's Counsel")[4] appealed the CRG's decision to the County Board of Appeals (the "CBA") and argued that the appropriate zoning scheme for Petitioner's townhome complex was the new, lower density scheme. The CBA stated: "It is the opinion of this Board that Baltimore County's actions in holding the Sycamore property in reservation for almost a year, at the least, when it clearly knew it had no funds to purchase it, and when it knew the property was in the process of being downzoned, bordered upon being arbitrary and capricious." On February

---

the recommendation of the Planning Board and continued the parcel's zoning at its current status, DR 5.5.

**3.** The number of units to be built had to be decreased from 220 to 198 as a result of deforestation regulations that were passed during the reservation period.

**4.** The Respondents in this action are the People's Counsel of Baltimore County, the Relay Improvement Association, and several interested individuals. Throughout this opinion, they will be referred to, collectively, as People's Counsel because they are advancing the same argument.

16, 1994, the CBA "affirm[ed] the CRG's approval of the Hilltop Place plan under the original 10.5 zoning because the County was estopped from enforcing the new zoning." The CBA relied on *Offen v. County Council,* 96 Md.App. 526, 625 A.2d 424 (1993), *rev'd* 334 Md. 499, 639 A.2d 1070 (1994), the first reported opinion in Maryland to apply the doctrine of zoning estoppel.

People's Counsel petitioned the Circuit Court for Baltimore County for review of the CBA decision, arguing that zoning estoppel was not recognized in Maryland and that the CRG plan should be denied. On November 18, 1994, Judge J. William Hinkel affirmed the decision of the CBA. By that date, this Court had reversed the Court of Special Appeals's decision in *Offen.* Judge Hinkel, nevertheless, based his decision on the theory of zoning estoppel. Judge Hinkel found that the Court of Appeals reversed *Offen* "because the issue of zoning estoppel was not properly briefed nor argued, and was beyond the Court of Special Appeals'[s] scope of review," but that "the Court of Appeals in that decision did not preclude the future consideration and use of the concept of zoning estoppel in Maryland." He then stated: "the CBA properly applied the doctrine of zoning estoppel as it is to be applied in Maryland; [and] ... under the doctrine, the County is estopped from enforcing the new zoning restrictions...."

People's Counsel appealed the decision of the circuit court to the Court of Special Appeals of Maryland. The Court of Special Appeals reversed the decision of the circuit court but did not hold that the use of the doctrine of zoning estoppel by the three decision-making bodies below was improper. In fact, the Court of Special Appeals based its reversal of the circuit court on the doctrine of zoning estoppel.

The Court of Special Appeals, however, did not apply the same zoning estoppel test that the three lower decision-making bodies had. The court instead articulated a narrower theory of zoning estoppel and based its decision on the new, narrower theory. The Court of Special Appeals explained that the facts in the instant case did not present an estoppel

under its new, narrower theory. The court, therefore, reversed the decision of the circuit court and remanded the case with instructions to reverse the decision of the CBA.

We granted the Petitioner's request for a writ of certiorari and People's Counsel's conditional cross-petition for the same to determine whether the lower density, 1992 zoning scheme may be enforced against Petitioner and whether any theory of zoning estoppel should be applied to this case. We shall affirm the decision of the Court of Special Appeals that the County is not estopped from enforcing the lower density, 1992 zoning scheme against Petitioner and that the CRG plan must be denied. We shall not, however, adopt the narrow theory of zoning estoppel enunciated by the Court of Special Appeals. Any decision whether we should enunciate some, still narrower theory of zoning estoppel need not be decided in the instant case.

## II.

Equitable estoppel has been defined as:

"the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which may have otherwise existed, either of property, of contract or of remedy, against another person who has in good faith relied upon such conduct and has been led thereby to change his position for the worse, and who on his part acquired some corresponding right either of property, of contract or of remedy."

*Fitch v. Double "U" Sales Corp.,* 212 Md. 324, 338, 129 A.2d 93, 101 (1957). Zoning estoppel is the theory of equitable estoppel applied in the context of zoning disputes. Courts in several jurisdictions use the theory of zoning estoppel to achieve equitable results in zoning disputes between the government and its property owners. David G. Heeter, *Zoning Estoppel: Application of the Principles of Equitable Estoppel and Vested Rights to Zoning Disputes,* URB.L.ANN. 63 (1971) (discussing the many jurisdictions that have applied zoning estoppel.)

A typical zoning estoppel scenario arises when the government issues a permit to a citizen that allows him or her to develop property in some way. Commonly, after the citizen has incurred some expense or has changed his or her position in reliance upon the permit, the property for which the permit was granted is rezoned so that the citizen's intended use is illegal. In such a situation, many courts allow the citizen to assert zoning estoppel as a defense to the government's attempt to enjoin the property use that violates the new zoning scheme.

The traditional, "black-letter" definition of zoning estoppel is:

"A local government exercising its zoning powers will be estopped when a property owner,

(1) relying in good faith,

(2) upon some act or omission of the government,

(3) has made such a substantial change in position or incurred such extensive obligations and expenses that it would be highly inequitable and unjust to destroy the rights which he ostensibly had acquired."

David G. Heeter, *Zoning Estoppel: Application of the Principles of Equitable Estoppel and Vested Rights to Zoning Disputes*, URB.L.ANN. 63, 66 (1971). Zoning estoppel was derived from equity principles and was intended to prevent the government from repudiating its prior conduct to the detriment of the property owner who relied on that conduct. URB.L.ANN. at 64–65. "The cases in which zoning estoppel is most often invoked and allowed ... fall into four factual categories. They involve reliance upon (1) a validly issued permit; (2) the probability of issuance of a permit; (3) an erroneously issued permit; or (4) the non-enforcement of a zoning violation." URB.L.ANN. at 67.

In the instant case, Petitioner argues that Maryland should adopt the black-letter definition of zoning estoppel, and Respondent argues that Maryland should not adopt the doctrine at all. In *Richmond Corp. v. Bd. of Co. Comm'rs*, 254 Md. 244, 256, 255 A.2d 398, 404 (1969), this Court declined to

express an opinion on whether zoning estoppel should be adopted in Maryland. In *Richmond,* a developer spent approximately $400,000 acquiring property in Prince George's County and had prepared plans, leases, and specifications to build a shopping center and parking lot. 254 Md. at 246–47, 255 A.2d at 399. Before construction began, the applicable zoning ordinance was amended to require a special exception for the developer's project. *Richmond,* 254 Md. at 247, 255 A.2d at 399–400. The developer's applications for special exceptions were denied. *Richmond,* 254 Md. at 249, 255 A.2d at 401.

One of the questions that this Court discussed was whether the county should be estopped by equitable considerations from requiring that the developer comply with the new zoning ordinance. *Richmond,* 254 Md. at 256, 255 A.2d at 404. We stated, however, that the facts would not raise an estoppel against the county even if the doctrine of estoppel were available in Maryland, because Richmond was aware of the proposed zoning change and had sufficient time to begin construction before the zoning ordinance was amended. *Richmond,* 254 Md. at 256–57, 255 A.2d at 404. We expressed no opinion, however, as to whether the doctrine of zoning estoppel was available in Maryland. *Richmond,* 254 Md. at 256, 262, 255 A.2d at 404, 407.

Twenty-five years later, in *County Council v. Offen,* 334 Md. 499, 639 A.2d 1070 (1994), this Court was again asked to determine the applicability of the theory of zoning estoppel. In 1966, Dr. J. Allen Offen bought property in order to build a 118,000 square foot "medical mall" facility. *Offen,* 334 Md. at 501, 639 A.2d at 1071. After twenty-five years, during which Dr. Offen, among other things, got his property rezoned, obtained an improved water and sewer service category, met with various engineers and architects to create a detailed site plan, and obtained provisional approval for his site plan, his property was downzoned pursuant to a comprehensive rezoning plan passed by the Prince George's County Council. *Offen,* 334 Md. at 501–03, 639 A.2d at 1071–72. Dr. Offen challenged the adoption of the comprehensive rezoning plan in

the Circuit Court for Prince George's County. *Offen,* 334 Md. at 503–04, 639 A.2d at 1072.

The doctrine of zoning estoppel was raised, for the first time in the litigation, by the Court of Special Appeals, *sua sponte. Offen,* 334 Md. at 505, 639 A.2d at 1073. The Court of Special Appeals reversed the Circuit Court for Prince George's County and remanded the case because the circuit court had failed to discuss the applicability of zoning estoppel. *Id.* We granted certiorari solely to determine the propriety of the Court of Special Appeals's actions in raising the issue of zoning estoppel *sua sponte* and in remanding the case for application of that doctrine. *Offen,* 334 Md. at 508, 639 A.2d at 1074. Our holding, that the Court of Special Appeals exceeded its authority by raising the issue of zoning estoppel, when it had been neither argued nor briefed, did not require us to reach the issue of whether the doctrine of zoning estoppel should be adopted in Maryland. *Offen,* 334 Md. at 505 n. 4, 639 A.2d at 1073 n. 4.

The instant case, however, does require us to examine the issue. Generally, courts are loath to impose estoppel against the government when it is acting in a governmental capacity. *Salisbury Beauty Schools v. St. Bd.,* 268 Md. 32, 63–64, 300 A.2d 367, 385–86 (1973). A few exceptions exist in Maryland, however. For example, in *City of Baltimore v. Crane,* 277 Md. 198, 352 A.2d 786 (1976), we held that Baltimore City was "estopped from attempting to enforce [a comprehensive] zoning ordinance" because the Cranes, in accepting an offer from the City, had changed their position substantially enough that they acquired a vested contractual interest in the existing zoning. 277 Md. at 207, 352 A.2d at 790. *See also, e.g., Permanent Fin. Corp. v. Montgomery Cty.,* 308 Md. 239, 518 A.2d 123 (1986) (holding county equitably estopped from imposing zoning ordinance's height controls where builder designed and constructed building in reliance on building permit and long-standing, reasonable interpretation by county as to how to calculate height).

We have never adopted *zoning* estoppel in Maryland. Instead, we, like all of the other courts that have declined to

adopt zoning estoppel "recognize a legal defense cast in terms of whether the property owner acquired 'vested rights' to use his land without governmental interference." David G. Heeter, *Zoning Estoppel: Application of the Principles of Equitable Estoppel and Vested Rights to Zoning Disputes,* URB. L.ANN. 63, 64 (1971). Whereas zoning estoppel is derived from principles of equity and "focuses upon whether it would be inequitable to allow the government to repudiate its prior conduct," vested rights is derived from principles of common and constitutional law and focuses upon "whether the owner acquired real property rights which cannot be taken away by governmental regulation." David G. Heeter, *Zoning Estoppel: Application of the Principles of Equitable Estoppel and Vested Rights to Zoning Disputes,* URB.L.ANN. 63, 64–65 (1971).

 Thus, although downzoning is generally permissible, under Maryland's vested rights theory, " 'when a property owner obtains a lawful building permit, commences to build in good faith, and completes substantial construction on the property, his right to complete and use that structure cannot be affected by any subsequent change of the applicable building or zoning regulations.' " *PG County v. Sunrise Dev.,* 330 Md. 297, 312, 623 A.2d 1296, 1304 (1993) (quoting *Prince George's Co. v. Equitable Tr.,* 44 Md.App. 272, 278, 408 A.2d 737, 741 (1979)).

> "In Maryland it is established that in order to obtain a 'vested right' in the existing zoning use which will be constitutionally protected against a subsequent change in the zoning ordinance prohibiting or limiting that use, the owner must (1) obtain a permit or occupancy certificate where required by the applicable ordinance and (2) must proceed under that permit or certificate to exercise it on the land involved so that the neighborhood may be advised that the land is being devoted to that use."

*Richmond,* 254 Md. at 255–56, 255 A.2d at 404.

### III.

In the case at bar, Petitioner had not obtained a permit to erect the townhome complex under a combination of DR 10.5

and DR 5.5 zoning. Thus, it is clear that Petitioner acquired no vested right in the existing zoning that would protect it against the subsequent change in the zoning ordinance. *Richmond,* 254 Md. at 256, 255 A.2d at 404. Petitioner will have to comply with the lower density, DR 5.5 zoning unless Petitioner can persuade this Court to recognize its version of the doctrine of zoning estoppel. The Court of Special Appeals discussed the applicability of that doctrine in its decision below, *Relay v. Sycamore,* 105 Md.App. 701, 661 A.2d 182 (1995).

The Court of Special Appeals stated that "the broad, black-letter doctrine of zoning estoppel ... is incompatible with Maryland's vested rights rule." *Relay,* 105 Md.App. at 726, 661 A.2d at 194. We agree. In fact, we have avoided discussions of zoning estoppel in cases where we have permitted downzoning and where the black-letter doctrine conceivably could have applied. *See, e.g., Sunrise,* 330 Md. 297, 623 A.2d 1296 (1993) (developer obtained permit, poured one footing and spent over two million dollars in total project expenses but did not acquire vested rights); *Ross v. Montgomery County,* 252 Md. 497, 250 A.2d 635 (1969) (developer obtained permit, poured one footing and spent over $56,000 but did not acquire vested rights).

Instead of limiting its discussion to the incompatibility of the theory of vested rights and the traditional theory of zoning estoppel, the Court of Special Appeals formulated a new, narrower zoning estoppel test. "[W]e adopt a narrow version of zoning estoppel, with a distinct set of requirements." *Relay,* 105 Md.App. at 727, 661 A.2d at 194. Those requirements are: "(1) the local government acts, or fails to act, in an arbitrary and unreasonable manner, (2) with deliberate intent to delay construction, and (3) the conduct at issue is the primary and proximate cause of the landowner's inability to vest his or her rights before a change in zoning occurs." *Relay,* 105 Md.App. at 736, 661 A.2d at 199. Whereas the black-letter definition of zoning estoppel was incompatible with Maryland's vested rights rule, the Court of Special Appeals stated that its new, narrower test "supplements the vested rights rule by recognizing that the strict application of

that rule may sometimes be unjust or unreasonable." *Relay,* 105 Md.App. at 727, 661 A.2d at 194. "In effect, our narrow version of zoning estoppel operates as an equitable, 'bad faith' exception to the vested rights rule." *Relay,* 105 Md.App. at 727, 661 A.2d at 195.

The Court of Special Appeals then analyzed the facts of the instant case to see whether it was a case to which the new, narrower zoning estoppel theory applied. *Relay,* 105 Md.App. at 739–42, 661 A.2d at 200–02. The court determined that it was not. *Relay,* 105 Md.App. at 739, 661 A.2d at 200. The court found three shortcomings in the opinion of the CBA. *Id.* First, the second prong of the new, narrower zoning estoppel test was not satisfied because "the CBA did not expressly find that the County acted with a deliberate intent to delay Sycamore's proposed development until the new zoning could be enacted." *Relay,* 105 Md.App. at 739, 661 A.2d at 200–01. Second, the Court of Special Appeals stated that the CBA's conclusion that, "if the County had released the reservation in December of 1991, 'Sycamore would reasonably have had time to obtain CRG approval and begin construction prior to downzoning,'" was not supported by substantial evidence. *Relay,* 105 Md.App. at 740, 661 A.2d at 201. Finally, the court stated that Petitioner's failure to request that the parcel be released from reservation to be "inexcusable," especially in light of the fact that Petitioner benefitted from the abatement of local taxes in the interim. *Relay,* 105 Md.App. at 742, 661 A.2d at 202.

We agree with the Court of Special Appeals that the facts in this case do not satisfy its new zoning estoppel test. We disagree, however, that even the theory articulated by the intermediate appellate court is compatible with Maryland's vested rights rule. We therefore do not adopt the test enunciated by the Court of Special Appeals. While there may be some, still narrower theory of zoning estoppel that may be compatible with our vested rights rule, we need not decide that issue today because the facts in this case do not raise any form of zoning estoppel that this Court would recognize.

Petitioner's application to the CRG for approval of its development plan fell far short of what is required to vest property rights under Maryland law. The reservation of Petitioner's land by the county merely placed the process on hold. Because any theory of zoning by estoppel that we might recognize in the future would be inapplicable to the facts in the instant case, we need not remand this case to the Court of Special Appeals.

We hold that the appropriate zoning to be applied to Petitioner's project is DR 5.5, the zoning that was adopted during the comprehensive rezoning process. Because Petitioner had not obtained a permit and had not proceeded to construction prior to the downzoning, Petitioner's rights did not vest, and Petitioner was not protected against the subsequent change in the zoning ordinance. Petitioner's remedy, if any exists, is to seek recovery of any "actual damages sustained ... by reason of the ... reservation, together with reasonable attorney's fees and expert witness fees as may be approved by the court." Baltimore County Code § 26–66(h).

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.*