704 A.2d 499

**MARYLAND STATE DEPARTMENT OF EDUCATION**

v.

**Douglas SHOOP.**

**No. 614, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

Jan. 13, 1998.

182

Joann G. Goedert, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for Appellant.

Thomas P. Lydon (J. Edward Davis & Associates, on the brief), Towson, for Appellee.

Argued before DAVIS, HOLLANDER and EYLER, JJ.

DAVIS, Judge.

The Maryland State Department of Education (MSDE) appeals from the judgment of the Circuit Court for Washington County reversing the decision of an Administrative Law

Judge (ALJ) of the Office of Administrative Hearings (OAH).[1] The ALJ's decision upheld appellee Douglas Shoop's suspensions and subsequent termination from employment as an automobile mechanics instructor in the Maryland Correctional Training Center (MCTC). The suspensions and termination were based on multiple infractions of a regulatory policy designed for the security and safety of inmates, personnel, and the general public. Originally, appellee received a one-day suspension for allowing inmate students to have unsupervised access to tools in the auto mechanic shop where he taught. After further investigation, MSDE found that the violations were not isolated and more egregious than previously thought and appellee was suspended without pay pending charges for removal. He was eventually terminated. Appellee separately appealed the suspensions and the termination with all being affirmed through the administrative process. On appeal in the circuit court, however, appellee prevailed. The circuit court reversed the second suspension and termination on *res judicata* and due process grounds. This appeal followed, in which MSDE presents two issues that we reframe below:

I. Whether proceedings for employment termination based on two policy violations are precluded by *res judicata* when there has already been an informal proceeding for suspension based on the same two violations.

II. Whether appellee received adequate procedural due process before being terminated.

### FACTS

On January 25, 1995, the State Superintendent of Schools permanently removed appellee from his position as a vocational auto mechanics instructor at MSDE's correctional education program at MCTC. MSDE sought appellee's termination on the grounds of misconduct, insubordination, and willful neglect of duty. All grounds were based on appellee knowingly

---

1. OAH's decision was adopted by the Maryland State Board of Education.

violating tool security policies by allowing inmates unsupervised access to the tools and equipment in his auto-mechanic shop.

When terminated, appellee had been employed by MSDE for approximately six years and was designated as unclassified Instructional Personnel–Auto Mechanics. In that capacity, he was assigned to teach vocational automotive mechanics to inmate students at MCTC, a Division of Correction (DOC) institution within the Department of Public Safety and Correctional Services.

Appellee was generally assigned approximately fifteen inmates per twenty-six week program. He generally used two inmate aides for assistance in shop activities. Appellee was responsible for the inmates' vocational training and for adherence to all security precautions prescribed by the DOC.

On April 7, 1993, the MCTC Correctional Security Chief issued the following tool control policy:

In light of recent concerns regarding the legitimacy of Required changes to the Tool Control Procedures in the Vocational Shops, it appears necessary to reduce to writing the essence of those changes.

By way of this memo, I am therefore giving notice of the following requirements:

1. Whenever a tool crib storage area is opened, the instructor must be present.

2. Instructors must be physically present in tool cribs during the issue and receipt of any tool.

3. An inmate may be present in the tool crib to assist the instructor, however, the instructor must provide direct supervision and must personally account for all tools issued and received.

4. The instructor will sign for all tools issued and received.

5. No inmate is allowed to be left alone in the tool crib.

6. The tool crib is to be locked at all times when the instructor is not in it.

Whether or not you personally agree with these Tool Control Regulations, compliance is mandatory. These regulations are a direct result of DOC Headquarters decision and denial of requested variances.

A new Institutional Directive on Tool Control is being formulated. Until the new directive is issued, Sgt. Gregory (Tool Control Officer) is charged with interpretation and implementation of all tool control practices. Utilize him as a resource person. He is, in effect, the final authority at the institutional level.

(Items 5 and 6 were added as of April 7, 1993. The other requirements were already in effect.) The policy was issued to all vocational instructors, including appellee.

On August 10, 1993, during a routine inspection of MCTC's vocational education facilities, MCTC Tool Control Officer, Sergeant Craig Gregory, discovered three unsupervised inmates in the unlocked tool crib in appellee's auto shop. He found appellee outside the shop smoking a cigarette. Sergeant Gregory warned appellee that further tool control violations would not be tolerated. According to Sergeant Gregory, appellee nodded in response, but expressed no regret for the violation.

The next day, Sergeant Gregory again inspected the shop. Upon entering, he observed one inmate speaking to someone in the direction of the tool crib and another inmate leaving the tool crib. The inmates were unsupervised. Sergeant Gregory found appellee sitting in the shop office with his feet on his desk and reading a newspaper. When Sergeant Gregory approached appellee to discuss the unsupervised inmate in the tool crib, appellee belligerently told Sergeant Gregory to "write [him] up!"

Sergeant Gregory filed an incident report recounting appellee's tool control violations with MCTC Warden Joseph Sacchet and MCTC Principal Carolyn Suman. Upon receipt of the report, Principal Suman confronted appellee with the violations. He responded that on August 10, 1993 the inmates were in the tool crib in contravention of his instructions. He

stated further that no inmate was in the tool crib unsupervised on August 11, 1993. He also denied reacting belligerently to Sergeant Gregory on August 11, 1993.[2] He contended that he regularly enforced the tool security policy, and that the incident of August 10, 1993 was the result of his inmate tool aide's disobedience of his instructions.

Based on Sergeant Gregory's report and appellee's explanation, Principal Suman recommended to John Linton, Director of the Correctional Education Program, that appellee be suspended for one day. Linton approved that recommendation. Appellee served that one-day suspension on August 17, 1993. Nevertheless, he appealed the suspension and a grievance hearing was held on August 25, 1993. The hearing officer affirmed the one-day suspension. Appellee appealed that decision on an untimely basis and it was dismissed accordingly.

Meanwhile, MSDE closed the MCTC auto shop and temporarily re-assigned appellee to low-level clerical duties at another correctional education facility. In that position, he had no contact with the tool crib or any duties with respect to tool control procedures.

Because of appellee's assertion that the inmates in the tool crib on August 10, 1993 were acting in violation of his instructions, Principal Suman confronted the inmate tool aide. The inmate admitted that he was in the tool crib unsupervised on August 10, 1993 *and* August 11, 1993. He stated that he often worked alone or with other inmates in the tool crib unsupervised. He confirmed that this was done with appellee's knowledge and, sometimes, by his instruction. Principal Suman informed the warden of these new disclosures.

Because of the inmate's allegations, MCTC's Chief of Investigations, Lieutenant Robert Tichnell, began an investigation of tool control procedures and practices in appellee's shop.

---

**2.** On August 18, 1993, however, appellee admitted in a memorandum to MCTC Warden Sacchet that he had indeed reacted to Sergeant Gregory in a threatening and unprofessional manner. (E.53).

Between August 17 and 19, 1993, Lieutenant Tichnell reviewed shop documents and investigated the shop facility. He interviewed appellee, Principal Suman, and nine inmates who had been students or aides in the auto shop from April to August 1993. Eight of the nine interviewees confirmed that inmates had unsupervised access to appellee's tool crib. Most of the interviewees characterized the unsupervised access as a regular occurrence that happened with appellee's knowledge and approval. Additionally, the interviewed inmates confirmed the existence of fabricated wire "keys" that were available for inmates to unlock the tool crib.

During his interview with Lieutenant Tichnell, appellee gave contradictory responses to questions regarding the accessibility of the tool crib to inmates and the availability of wire "keys."

Lieutenant Tichnell's review of the August 1993 tool sign-out logs revealed that various individuals other than appellee were signing tools out of the tool crib. Upon inspection of the auto shop, Lieutenant Tichnell determined that the tool crib could be opened with a simple wire device and such devices were found in the tool crib area.

Based on the investigation, Lieutenant Tichnell concluded that appellee had violated DOC standards for personal conduct, control of tools, performance of duties, handling of State property, reports, and attitude toward inmates, and "blatantly disregarded the tool control policy." Lieutenant Tichnell submitted his investigation report to MCTC Warden Sacchet.

Linton also interviewed appellee after the suspension. He found that appellee gave inconsistent and evasive responses to questions as to whether he allowed inmates in the tool crib unsupervised. Linton testified at the OAH hearing that appellee's explanations for his failure to supervise activities adequately in his shop on August 10 and 11, 1993, were not credible. Linton also testified that appellee refused to accept responsibility for his conduct or to demonstrate that he understood the importance of the tool security policies or could be trusted to uphold them in the future.

On August 22, 1993, Warden Sacchet telephoned Linton to inform him of the content of Lieutenant Tichnell's investigatory report, request that appellee be barred from the MCTC facility, and request that appellee's employment be terminated.

On October 14, 1993, MSDE filed charges for removal of appellee and suspended him without pay pending resolution of the charges. He was sent a copy of those charges along with a letter explaining the reasons for the charges and the accompanying suspension. The charges included detailed descriptions of the August 10 and 11, 1993 incidents, noting appellee's failure to supervise the inmates in his classroom, and to enforce the tool control policies on those dates, and his defiance of Sergeant Gregory on August 11, 1993. The charges concluded that "[t]hese incidents are in direct violation of written procedures regarding Tool Control ... made known to appellee on March 2, 1993 and April 7, 1993."

Appellee appealed the suspension pending charges for removal. At the hearing, appellant presented evidence regarding the August 10 and 11, 1993 incidents, as well as Lieutenant Tichnell's report and Linton's post-suspension interview with appellee. The suspension was upheld.

Appellee also appealed his termination. On June 6, 1994, appellant gave written notice to appellee's attorney of the witnesses it planned to call and the documents it intended to introduce as evidence at the termination hearing. The list of witnesses included Lieutenant Tichnell, and the document list included his August 1993 report and all of its exhibits. Before the termination hearing, appellee's counsel requested to inspect all documents in appellant's files that appellant deemed relevant to the termination proceedings. Those documents were made available to appellee's counsel for inspection on or about June 6, 1994, and they included Lieutenant Tichnell's report.

The termination hearing occurred on June 13, 1994, and resulted in a finding that appellee's appeal was without merit. Appellee filed exceptions to the State Board of Education and,

after a January 24, 1995 exceptions hearing, appellee's employment was terminated.

Appellee filed a timely appeal to the circuit court seeking reversal of his termination on the following grounds: (1) his termination, based on the same August 10 and 11, 1993 violations of tool security policies as his one-day suspension, was barred by the prohibition against double jeopardy, (2) he lacked proper notice that the charges for removal were founded, in part, on the results of Lieutenant Tichnell's investigative report, and (3) evidence contained in that report regarding inmate statements was inadmissible hearsay.

At the hearing in circuit court, appellee's attorney argued that the attorney at the OAH termination hearing was unaware, until the day of the hearing, that MSDE intended to introduce any evidence regarding the investigative report. MSDE objected to this argument, averring that it was a misrepresentation.

On August 31, 1995, the circuit court issued an opinion and order reversing appellee's termination. In response to appellee's double-jeopardy argument, the court first held that collateral estoppel barred MSDE from seeking appellee's removal for reasons arising from the same events that led to the one-day suspension. Second, the court held that the termination should be overturned because MSDE's written charges for removal failed to include charges related to incidents other than the August 10 and 11, 1993 infractions. Specifically, the court stated that "[h]ad [appellee] been notified that there would be charges of improprieties beyond those specifically described in the notice, he would have been given an opportunity to prepare a response."

On August 21, 1995, shortly before the trial court filed its opinion and order, the Court of Appeals issued a slip opinion in an employee termination case with facts and legal issues almost identical to those of the case at bar. *Ward v. Dep't of Public Safety*, 339 Md. 343, 663 A.2d 66 (1995). In *Ward*, the Court of Appeals held that a DOC employee who had been suspended on numerous occasions and then subsequently ter-

minated based on the same infractions did not have a double-jeopardy defense. Specifically, the Court stated that "[b]ecause the discipline is not imposed for the purpose of punishment, the principles of double jeopardy do not apply." *Ward,* 339 Md. at 351, 663 A.2d 66.

MSDE filed a Motion to Alter or Amend the Judgment based on the decision in *Ward.* The Motion was also grounded on the argument that appellee's counsel had misrepresented whether appellee had actual notice of appellant's intention to present evidence regarding Lieutenant Tichnell's investigation report at the June 13, 1994 termination hearing. The court held a hearing on November 21, 1995.

On March 5, 1997, the circuit court issued an opinion and order, again reversing appellee's termination, but on different grounds. In its March 5, 1997 order, the trial court held that the doctrine of *res judicata,* as opposed to collateral estoppel, barred appellee's removal for the August 10 and 11, 1993 conduct. In support of its opinion and order, the circuit court reasoned as follows:

> Appellant should not be required to repeatedly defend against suits based on the same cause of action. He should be entitled to believe that the one day suspension was the sanction imposed for the alleged violations and that the litigation had ended. Finality is needed in every case and this one is no exception. Therefore, based on *res judicata* and the related prohibition against splitting a cause of action, the removal proceeding should be reversed.

The circuit court also suggested that its previous opinion and order reversing the termination because the charges of removal did not specifically refer to Lieutenant Tichnell's report was moot because MSDE conceded, in its hearing on its motion to alter or amend the judgment, "that the sole basis for the removal from employment was the tool control policy violations of August 10 and 11." The court noted, however, that "if [MSDE] attempts to review this issue on appeal, this court reaffirms" its earlier decision with respect to notice.

This appeal followed.

## DISCUSSION

### *Standard of Review*

An employee may "appeal" disciplinary suspensions, suspensions without pay pending filing of charges for removal, and charges for removal to the OAH. CODE OF MARYLAND REGULATIONS (COMAR) 06.01.01.57, 06.01.01.61, 06.01.01.65. An ALJ from that office conducts a hearing and issues a "written proposal for decision," that is subject to approval by the Secretary of the Department of Personnel (Secretary). *Id.* If the employee is dissatisfied with the proposed decision, the employee may file exceptions with the Secretary and present oral argument. *Id.* The Secretary (or designee of the Secretary) issues a final decision that is subject to judicial review in a circuit court, pursuant to the Administrative Procedure Act. *Id.*; MD.CODE ANN. (1994 Repl.Vol.), State Gov't (S.G.), § 10–222.

 When exercising such judicial review, a circuit court may:

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious.

S.G. § 10–222. "A court's role is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erro-

neous conclusion of law." *United Parcel v. People's Counsel,* 336 Md. 569, 577, 650 A.2d 226 (1994).

Because this is an appeal from a circuit court's review of an agency's final decision, our role in this appeal "'is precisely the same as that of the circuit court.'" *Dept. of Human Resources v. Thompson,* 103 Md.App. 175, 188, 652 A.2d 1183 (1995) (quoting *Dept. of Health & Mental Hygiene v. Shrieves,* 100 Md.App. 283, 303–04, 641 A.2d 899 (1994)). Accordingly, we have the same recourse given to the circuit court by S.G. § 10–222(h).

A reviewing court may not make its own findings of fact, *Board of County Comm'rs v. Holbrook,* 314 Md. 210, 218, 550 A.2d 664 (1988), or supply factual findings that were not made by the agency. *Ocean Hideaway Condo. Ass'n v. Boardwalk Plaza,* 68 Md.App. 650, 662, 515 A.2d 485 (1986). Findings of fact are essential in order for the reviewing court meaningfully to review the agency's decision. *See Gray v. Anne Arundel Co.,* 73 Md.App. 301, 307–09, 533 A.2d 1325 (1987). Moreover, it is the agency's function to determine the inferences to be drawn from the facts. On review, neither the circuit court nor this Court may substitute its judgment for that of the agency. *Eberle v. Baltimore County,* 103 Md.App. 160, 165, 652 A.2d 1175 (1995).

To the extent that issues on appeal turn on the correctness of an agency's findings of fact, such findings must be reviewed under the substantial evidence test. *Thompson,* 103 Md.App. at 190, 652 A.2d 1183 (citing *State Election Bd. v. Billhimer,* 314 Md. 46, 58–59, 548 A.2d 819 (1988)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 191, 652 A.2d 1183 (quoting *Caucus Distributors, Inc. v. Md. Securities Comm'r,* 320 Md. 313, 323–24, 577 A.2d 783 (1990)). *See also Relay Improvement Ass'n v. Sycamore Realty Co., Inc.,* 105 Md.App. 701, 714, 661 A.2d 182 (1995), *aff'd,* 344 Md. 57, 684 A.2d 1331 (1996) (stating that "substantial evidence means more than a 'scintilla of evidence,' such that a reasonable person could come to more than one conclusion."). In

other words, the question on appeal becomes whether a reasoning mind could reasonably have reached the agency's factual conclusion. *Eberle*, 103 Md.App. at 166, 652 A.2d 1175. We may not uphold the agency's decision " 'unless it is sustainable on the agency's findings and for the reasons stated by the agency.' " *United Parcel Serv., Inc. v. People's Counsel*, 336 Md. 569, 577, 650 A.2d 226 (1994) (quoting *United Steelworkers v. Bethlehem Steel*, 298 Md. 665, 472 A.2d 62 (1984)).

 In contrast to factual challenges, when the question before the agency involves one of statutory interpretation or an issue of law, our review is more expansive. *Liberty Nursing Center, Inc. v. Dept. of Health & Mental Hygiene*, 330 Md. 433, 624 A.2d 941 (1993). Under this more expansive review, we may substitute our judgment for that of the agency. *Thompson*, 103 Md.App. at 190, 652 A.2d 1183. This standard of review is aptly named the "substituted judgment standard." *Id.* Consequently, we are not bound by the agency's statutory or legal conclusions. *Id.*; *Dep't. of Health & Mental Hygiene v. Reeders Memorial Home, Inc.*, 86 Md.App. 447, 452, 586 A.2d 1295 (1991).

 Lastly, "modification or reversal of the agency's decision is only appropriate when the petitioner has demonstrated that substantial rights of the petitioner have been prejudiced by one or more of the causes specified in [S.G.] § 10–222(h)." *Thompson*, 103 Md.App. at 191, 652 A.2d 1183 (citing *Bernstein v. Real Estate Comm'n*, 221 Md. 221, 230, 156 A.2d 657 (1959), *appeal dismissed*, 363 U.S. 419, 80 S.Ct. 1257, 4 L.Ed.2d 1515 (1960)).

Accordingly, we must examine the record to determine whether the ALJ applied the correct law and whether there was substantial evidence from which a reasonable mind could arrive at the factual conclusions reached by the ALJ.

## I

 Appellant asserts that the circuit court erred when it reversed appellee's termination on *res judicata* grounds.

We agree. In determining whether collateral estoppel or *res judicata* [3] principles apply to the findings of an administrative proceeding, "the threshold inquiry is whether the earlier proceeding [was] the essential equivalent of a judicial proceeding." *Batson v. Shiflett,* 325 Md. 684, 704, 602 A.2d 1191 (1992)(quoting *Sugarloaf Citizens Ass'n v. Northeast Maryland Waste Disposal,* 323 Md. 641, 659 n. 13, 594 A.2d 1115 (1991)). An administrative hearing may be deemed "the essential equivalent of a judicial proceeding" only if it "embraced elements of adjudicatory procedure consistent with established principles of due process." *Id.* at 705, 602 A.2d 1191 (quoting Restatement (second) of Judgments §§ 83–84 (1982)). Collateral estoppel should not attach when the process is "very informal." *Id.*(quoting Restatement (second) of Judgments, § 84 comment c, (1982)). There is no question that, "when an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it, the courts have not hesitated to apply *res judicata* to enforce repose." *Astoria Federal Savings and Loan Assoc. v. Solimino,* 501 U.S. 104, 107, 111 S.Ct. 2166, 2169, 115 L.Ed.2d 96 (1991) (quoting *United States v. Utah Construction and Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966)).

 Despite appellee's assertions to the contrary, we are not convinced that appellant was acting in a "judicial capacity" when it suspended appellee. Appellee's appeal of the suspension and termination does not alter our belief.

Internal MSDE proceedings are "very informal." Indeed, after receiving Sergeant Gregory's incident report, Principal

---

**3.** In *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), the Court discussed the distinction between *res judicata* and collateral estoppel, stating that:

Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action.

*Id.* at 326 n. 5, 99 S.Ct. at 649 n. 5

Suman requested that appellee be given a one-day disciplinary suspension for the tool control policy violations of August 10 and 11, 1993. In response, Kristin Williams, Director of Human Resource Management Branch, notified appellant that a one-day suspension was approved to occur on August 17, 1993. The letter notified him of his right to appeal this decision. Although the appeal process proceeds in similar fashion to judicial proceedings, it, too, is very informal.

In 1993, when the infractions took place, State regulations only required that the representative of the agency hold a conference with the employee and others present to ascertain whether the grievance had merit. COMAR 06.01,01.56(C) (1993).[4] Such hearings were conducted by Assistant Superintendents of Schools, not judicial officers. They were not trained in civil procedure. The proceedings were not recorded in any way. No rules of evidence or trial procedure were recognized. Internal grievance decisions were so informal that the OAH heard appeals *de novo* and were required to give no deference to the fact-finding of the grievance officer.

The circuit court was apparently persuaded by the employee's ability to be represented by counsel, call witnesses, and introduce exhibits at the internal grievance hearing. We agree that in some situations an administrative appeal has *res judicata* effect. We do not agree, however, that the decision to suspend appellee or the hearing that resulted from appellee's appeal of that decision bars a subsequent proceeding to terminate appellee, especially when there are subsequent findings that indicate the original violations are more serious than previously thought.

---

4. In 1996, State employee grievance procedures were amended substantially as part of a major Personnel Reform Act. MD.CODE ANN., State Pers. § 11–101 *et seq.* (1996). These amendments, as they apply to employee grievance hearing procedures, were recently implemented in State regulations at COMAR 06.01.01.57 (1996). This new regulation was cited erroneously as the procedure governing appellee's challenge to his 1993 suspension in the circuit court's March 5, 1997 Opinion and Order.

Additionally, the Court of Appeals has specifically held that the termination of a State employee is executive in nature, not judicial or quasi-judicial. *Eliason v. State Roads Commission,* 231 Md. 257, 260–61, 189 A.2d 649 (1963). In *Eliason,* the Court stated that even though the decision to discharge an employee required the determination of facts and the exercise of judgment and discretion the ultimate decision was not judicial or quasi-judicial. *Id.*

The doctrine of *res judicata* is intended to prevent "multiplicity of litigation and to avoid the vexation, costs and expenses incident to more than one suit on the same cause of action." *Jones v. Speed,* 320 Md. 249, 258, 577 A.2d 64 (1990). It generally precludes "the relitigation of matters that have been fully and fairly litigated and finally decided between the parties, by a tribunal of competent jurisdiction." *University of Maryland v. Boyd,* 93 Md.App. 303, 308, 612 A.2d 305 (1992) (citing *Murray Int'l Freight Corp. v. Graham,* 315 Md. 543, 547, 555 A.2d 502 (1989)). We do not believe, however, that *res judicata* is intended to curtail a public agency's executive discretion in disciplining employees.

Indeed, *res judicata* principles "are justified on the sound and obvious principle of judicial policy that a losing litigant deserved no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise." *Astoria,* 501 U.S. at 107, 111 S.Ct. at 2169. They are grounded in the ideas that "there should be an end to litigation" and that "no man should be twice sued for the same cause." *Jones,* 320 Md. at 258, 577 A.2d 64 (citing, *inter alia, Whitehurst v. Rogers,* 38 Md. 503 (1873)). MSDE did not twice sue appellee, split causes of action, or seek a rematch on unsuccessful litigation. Rather, acting in its executive capacity, appellant conducted an informal grievance conference regarding the one-day suspension based on what it believed were two discrete and isolated policy transgressions. Later, upon learning that these violations were the proverbial tip of the iceberg, appellant discovered additional evidence in support of termination at the removal hearing.

Under the circuit court's reasoning, appellant's defense of its disciplinary suspension in the informal agency grievance proceeding requested by appellee, bars appellant from later seeking termination based on information it learned after the suspension. We believe that result to be illogical.

In a similar vein, as stated *supra*, the Court of Appeals held in *Ward*, that double jeopardy is inapplicable to public employee disciplinary proceedings.[5] Indeed, the Court rejected an argument almost identical to the one raised by appellee in the instant case.

In *Ward*, a correctional officer received a five-day suspension for not timely notifying his superior that he had received a criminal summons, as required by regulation. Months later, the officer failed to report to work or notify his superior in a timely manner that he would not report. He received a reprimand for this infraction. Approximately two months later, Ward failed to report for duty because he overslept. He never telephoned to tell his supervisor that he would not be able to work that day. For this infraction, he received another five-day suspension. Three months later, Ward failed to report for duty because he reportedly had difficulty with his car. He did not timely notify his supervisor, according to the

---

5. The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." This clause not only protects against multiple prosecutions for the same offense, but also protects against multiple punishments. The United States Supreme Court has determined that, for the purposes of a multiple punishments inquiry, the government can impose punishment, not only in a "criminal" proceeding, but also in a "civil" proceeding. Indeed, "the labels 'criminal' and 'civil' are not of paramount importance." Rather, "the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve." If the purpose of the penalty is retribution or deterrence, it is punishment. If, however, the purpose of the penalty is remedial, it is not punishment. Accordingly, the United States Supreme Court has stated that "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment as we have come to understand the term."
*Ward*, 339 Md. at 350, 663 A.2d 66 (citations omitted).

established procedure, that he could not work that day. For this infraction, he received another five-day suspension. Simultaneous with that suspension, Ward was informed that charges for removal were going to be filed against him with the Secretary. The removal charges were based on the four disciplinary infractions described above, even though Ward had already received suspensions for those violations.

Ward appealed the reprimand, suspension, and charges for removal to the OAH. An ALJ affirmed all of the disciplinary sanctions, including the charges for removal. Ward filed an action for judicial review in the Circuit Court for Wicomico County. The circuit court judge rejected a double-jeopardy argument and upheld the disciplinary sanctions, including the removal. Ward appealed to this Court. While the case was still pending, the Court of Appeals granted *certiorari* on its own motion.

Ward argued that he could not be suspended for an incident and then removed based on "exactly the same incident." This, he maintained, violated the double-jeopardy principle. Rejecting this argument, the Court held that the disciplinary sanctions imposed on Ward were remedial in nature, not punitive. In support of its holding the Court stated:

> The Division of Correction, like any employer, must maintain control over its employees. To this end the division has established standards of conduct and published them to its employees. *The standards would have no meaning, force or effect if there were no penalty for their violation.* Thus, the Division has established a system of progressive discipline. Common sense dictates that this discipline is imposed to ensure that employees adhere to the established standards of conduct.... *Because the discipline is not imposed for the purpose of punishment, the principles of double jeopardy simply do not apply.*

This conclusion is supported by *Attorney Griev. Comm'n v. Andresen*, 281 Md. 152, 379 A.2d 159 (1977), in which we held that " 'disbarment is intended not as a punishment, but as protection to the public.' " *Id.* at 155, 379 A.2d 159

(quoting *Maryland St. Bar Ass'n v. Sugarman*, 273 Md. 306, 318, 329 A.2d 1 (1974), *cert. denied*, 420 U.S. 974, 95 S.Ct. 1397, 43 L.Ed.2d 654. (1975)). Accordingly, we held that disbarment was not punishment for the purposes of Double Jeopardy. *Id.*

*Ward*, 339 Md. at 350, 663 A.2d 66 (emphasis added).

To bind an agency's ability to terminate an unsatisfactory employee simply because that employee chose to appeal a suspension based on the unsatisfactory behavior is illogical, and we are hesitant to render such a holding. Appellant had numerous reasons to terminate appellee's employment even after the first suspension. Correctional officials testified that they would be uncomfortable working in an institution where appellee was responsible for the supervision of inmates. The assistant warden testified that he received calls from other correctional officers who were concerned that appellee's return would increase their workload and levels of fear. Clearly, appellee's termination was justified.

■■■ Appellee urges this Court to address an issue raised by the trial court. Specifically, appellee notes that the first disciplinary suspension was remedial in nature. As for the termination, however, appellee asserts that it could have amounted to punishment because the necessary remedial effects were supplied by the original suspension. Nevertheless, appellee's position lacks merit. Double jeopardy applies when there are two punishments. Appellee admits that the first suspension was remedial, not punitive. Consequently, it does not matter if the second suspension or termination amounts to punishment.

## II

■■■ Appellant contends that the circuit court erred when it reversed appellee's termination on the grounds that he had not received adequate notice of the evidence that appellant intended to use to support the charges for removal at the termination hearing.[6] We agree.

---

6. In its second memorandum and order, the circuit court claims that this issue is moot because appellant conceded at the hearing on the

MSDE RESOLUTION 1983–46 provides that the State Superintendent must file charges for removal which shall state the causes for said action. The resolution further provides that the affected employee must be informed of the right to a hearing and that, if elected, the MSDE must bear the burden of establishing the legitimacy of its cause by a preponderance of the evidence. Unquestionably, the aforementioned procedural requirements of the MSDE were satisfied through the October 14, 1993 correspondence to appellee.

 "[T]he requirement of notification purposed to inform may be satisfied by proof of actual notice." *State v. Barnes,* 273 Md. 195, 210, 328 A.2d 737 (1974); *see also Clark v. Wolman,* 243 Md. 597, 600, 221 A.2d 687 (1966) (stating that there is no due process violation when the party received actual notice).

 Appellee received actual notice that appellant intended to use Lieutenant Tichnell's investigation report during an interview with Linton held shortly after the report's release. It was released at the October 1993 hearing regarding his suspension pending charges for removal, during pre-termination hearing discovery, and in pre-hearing correspondence from appellant's counsel. The correspondence specifically listed the report as an exhibit that appellant would introduce into evidence and Lieutenant Tichnell, the report's author, as one of appellant's witnesses.[7] One "who has actual notice of

motion to alter or amend the judgment that the only basis for termination was the two incidents. The circuit court, however, stated that, if the issue were raised on appeal, then the lower court's first opinion and order would be revived on this issue. In any event, we are required to review the decision of the agency, not that of the circuit court. At the agency level, appellant relied on Lieutenant Tichnell's testimony and report as well as evidence of the August 10 and 11, 1993 incidents. Consequently, we address the issue of notice because it is not moot.

7. Apparently, appellee's counsel in circuit court was standing in for counsel that represented appellee during the administrative hearings. Consequently, it seems that original counsel failed to inform fully new counsel on the status of the case. Therefore, new counsel represented to the trial court that appellee had not received notice of Lieutenant Tichnell's testimony and report.

circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry, with reasonable diligence, is deemed to have notice of the fact itself." *Baltimore v. Perticone,* 171 Md. 268, 274, 188 A. 797 (1937).

Accordingly, we reverse the judgment of the circuit court. We conclude that MSDE's imposition of the suspensions and termination proceedings were disciplinary/remedial rather than punitive. As such, principles of double jeopardy do not apply.

We also conclude that appellee had actual notice that appellant would call Lieutenant Tichnell as a witness and use his investigatory report. Consequently, the circuit court's finding of a due process violation must be reversed.

**JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY REVERSED; CASE REMANDED WITH INSTRUCTIONS TO REMAND THE CASE TO THE ADMINISTRATIVE AGENCY FOR APPROPRIATE ACTION CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**