*COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT.*

640 A.2d 1142

**PRINCE GEORGE'S COUNTY, Maryland**

v.

**Sidney J. BROWN.**

**No. 92, Sept. Term, 1993.**

Court of Appeals of Maryland.

May 12, 1994.

Bernadette F. Lamson, Associate County Atty. (Michael P. Whalen, County Atty., Albert J. Lochte, Deputy County Atty., and J. Michael Dougherty, Jr., Associate County Atty., all on brief), Upper Marlboro, for appellant.

Julia M. Freit, Asst. Atty. Gen. (J. Joseph Curran, Jr., both on brief, Baltimore), for the State of Maryland as amicus curiae.

Robert B. Ostrom (Knight, Manzi, Brennan, Ostrom & Ham, P.A., all on brief), Upper Marlboro, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

KARWACKI, Judge.

We issued a writ of certiorari in this case to determine whether a supplemental deed of trust recorded in Maryland is subject to state recordation and Prince George's County transfer tax when the deed of trust which it supplements was only recorded outside the State of Maryland. Specifically, we are asked whether the supplemental instrument exemption provided by Maryland Code (1986), § 12–108(e) of the Tax–Property Article extends to an instrument that supplements an instrument previously recorded in a sister state. We hold that this exemption does not apply to instruments that supplement instruments previously recorded outside Maryland, and conse-

quently, such instruments are subject to both state recordation and the County's transfer tax.

I

On June 28, 1991, Sydney J. Brown ("Brown") recorded among the land records of Prince George's County three supplemental deeds of trust on real property in that county. All three of the Maryland deeds of trust provided additional security for loans previously made by Sovran Bank ("Sovran") to Brown and his related interests to finance a real estate project in Loudon County, Virginia. The original loans were made between 1987 and 1991 and were secured by deeds of trust covering that property and recorded among the land records of Loudon County, Virginia. In order to additionally secure and strengthen its position, but not in consideration of any additional loans, Sovran required the following three deeds of trust to be recorded among the land records of Prince George's County: (1) a $2,000,000 Supplemental Deed of Trust between Brown and Sovran Bank on which the County assessed and collected a $30,000 county transfer tax and a $8,800 state recordation tax; (2) a $4,505,000 Supplemental Deed of Trust between Brown, Shellhorn Associates Limited Partnership and Sovran Bank on which the County assessed and collected $67,575 in county transfer taxes and $19,822 in state recordation taxes; and (3) a $14,133,000 Supplemental and/or Indemnity Deed of Trust between Brown and Sovran Bank on which the County assessed and collected a $180,000 county transfer tax.

Brown and Alan I. Kay control Shellhorn, Inc. and Shellhorn Associates Limited Partnership. Shellhorn, Inc. is a Virginia corporation of which Alan I. Kay is president and Brown is vice-president. Brown and Alan I. Kay are general partners of Shellhorn Associates Limited Partnership, a Virginia limited partnership. Stuart G. Brown is Brown's son. Brown, Kay, Stuart G. Brown, Shellhorn, Inc. and Shellhorn Associates Limited Partnership are all parties to the loan transactions with Sovran Bank. The relevant facts concerning each of the Maryland Deeds of Trust are as follows.

## A. *Maryland $2 Million Deed of Trust*

Brown and Kay obtained a loan of $2,000,000 on December 30, 1988 from Sovran. At that time, Brown and Kay, as borrowers, executed a promissory note in the same amount. Kay also executed the promissory note on behalf of Shellhorn, Inc., as guarantor of the promissory note. Sovran secured its loan by obtaining an indemnity deed of trust from Shellhorn, Inc. for the same amount encumbering real property in Loudon County, Virginia ("Virginia Indemnity Deed of Trust"). Brown and Kay, as borrowers, Shellhorn, Inc., as guarantor, and Sovran executed three amendments to the promissory note on June 20, 1989, July 25, 1989 and November 10, 1989. These amendments extended the maturity date on the loan, but left the principal amount owed unchanged.

The November 10, 1989 amendment also added Stuart G. Brown as borrower and Shellhorn Associates Limited Partnership as guarantor. On November 10, 1989, Sovran further secured its loan by obtaining an amendment to the Virginia Indemnity Deed of Trust encumbering additional property in Loudon County, Virginia.

On June 26, 1991, Brown, Kay and Stuart Brown, as borrowers, Shellhorn, Inc. and Shellhorn Associates Limited Partnership, as guarantors, and Sovran effected the most recent changes to the promissory note through the execution of a Modification Agreement Deed of Trust Note. This modification agreement extended the maturity date of the loan and changed the interest rate. On that same day, Sovran also additionally secured its loan by obtaining a $2 million deed of trust from Brown encumbering real property in Prince George's County, Maryland (the "Maryland $2 Million Deed of Trust"). This deed of trust encumbering the Prince George's property is one of the three deeds of trust at issue in this case.

Sovran first recorded its security interest reflected in the Maryland $2 Million Deed of Trust among the Land Records of Prince George's County on June 28, 1991, and it was at this time that the County collected state recordation and county transfer taxes upon such recordation. The previously dis-

cussed indemnity deeds of trust from Shellhorn, Inc. and Shellhorn Associates Limited Partnership were recorded among the land records of Loudon County, Virginia by Sovran on December 30, 1988, November 16, 1989 and June 28, 1991. No other instruments reflecting this transaction were recorded among the Land Records of any other county in Maryland or Baltimore City.

### B. *Maryland $4.5 Million Deed of Trust*

Brown, Shellhorn, Inc., and Shellhorn Associates Limited Partnership obtained a $4,505,000 loan from Sovran on June 26, 1991. To evidence their debt, Brown, Shellhorn, Inc., and Shellhorn Associates Limited Partnership executed a promissory note in the same amount. Sovran secured its loan by obtaining a deed of trust from Brown, Shellhorn, Inc. and Shellhorn Associates Limited Partnership which encumbered real property in Loudon County, Virginia. Sovran also secured that loan by obtaining a deed of trust from Brown, Shellhorn, Inc. and Shellhorn Associates Limited Partnership which encumbered real property in Prince George's County, Maryland (the "Maryland $4.5 Million Deed of Trust").

Sovran recorded its security interest reflected in the Maryland $4.5 Million Deed of Trust among the Land Records of Prince George's County on June 28, 1991, and it was at this time that the County collected state recordation and county transfer taxes. Sovran recorded its security interest reflected in the Virginia $4.5 Million Deed of Trust among the Land Records of Loudon County, Virginia on June 28, 1991, as well. Sovran did not record any other instrument reflecting this transaction among the land records of any other county in Maryland or Baltimore City.

### C. *Maryland $14 Million Indemnity Deed of Trust*

The third deed of trust secured three loans made by Sovran between June, 1987 and June, 1991. The loans were in the amounts of $8,400,000, $3,500,000, and $2,233,000, for a total of $14,133,000. In return, Shellhorn, Inc. and Shellhorn Associates Limited Partnership executed three promissory notes and

several amendments to the promissory notes. Sovran secured the three loans by obtaining deeds of trust from Shellhorn, Inc. and Shellhorn Associates Limited Partnership encumbering real property in Loudon County, Virginia.

Brown executed several guarantee agreements during June, 1991, guaranteeing the three loans. On June 26, 1991 Sovran agreed to treat the three loans on a consolidated basis, and Brown executed a deed of trust encumbering real property in Prince George's County to secure his guarantees. The total amount of the debt guaranteed was $14,133,000, but the Indemnity Deed of Trust secured only $12,000,000 of that debt. Because the Indemnity Deed of Trust secured only $12,000,000, the County collected a county transfer tax on only $12,000,000 of the $14,133,000 owed. Furthermore, because state recordation tax is deferred on an indemnity instrument until a default occurs on the loan that is guaranteed, the County deferred the collection of state recordation tax pursuant to Maryland Code (1986) § 12–105(f) of the Tax–Property Article. Sovran did not record any other instrument reflecting this transaction among the Land Records of any other county in Maryland or Baltimore City.

After paying the state recordation and county transfer taxes on the three Maryland deeds of trust, Brown filed a claim for refund, claiming that the Maryland deeds of trust were exempt from state recordation tax as supplemental instruments pursuant to § 12–108(e) of the Tax–Property Article. Brown contended that the Virginia deeds of trust qualified as previously recorded instruments of writing, § 12–101(c), and that the Maryland deeds of trust qualified as supplemental instruments of writing because they supplemented the previously recorded instruments of writing, i.e., the Virginia deeds of trust. See § 12–101(g). Because the Maryland deeds of trust secured pre-existing debts and the amount of consideration given in those loans was not increased, Brown argued that the Maryland deeds of trust were exempt from recordation tax as supplemental instruments of writing. See § 12–108(e). He also argued that the deeds of trust were exempt from county transfer tax because no actual consideration or additional

consideration was payable, as required by § 10–187(a) of the Prince George's County Code (1991). On March 25, 1992, the County's Department of Finance denied Brown's refund request. On March 27, 1992, Brown filed an appeal with the Maryland Tax Court.

The Tax Court affirmed the decision of the County denying Brown's claim for refund of state recordation and county transfer taxes paid upon recordation of the Maryland deeds of trust. The Circuit Court for Prince George's County, however, reversed the decision of the Tax Court. The County then appealed that judgment to the Court of Special Appeals. Brown cross-appealed. We issued a writ of certiorari on our own motion prior to consideration of the case by the intermediate appellate court, 332 Md. 449, 631 A.2d 906.

## II

Section 14–513 of the Tax–Property Article authorizes any party to a Maryland Tax Court proceeding to appeal a final decision thereof to the circuit court for the county in which the property is located. Section 14–515 authorizes such a party to appeal a final decision of the circuit court to the Court of Special Appeals. The scope of review for an appeal from an administrative agency, such as the Maryland Tax Court,[1] depends on whether the court is reviewing a question of law, question of fact, or a mixed question of law and fact. Since the issue in this case is whether *vel non* an instrument recorded in another state qualifies as a previously recorded instrument for purposes of the supplemental instrument exemption, we are called upon to answer solely a question of law. A reviewing court is under no constraints in reversing an administrative decision that is premised solely upon an erroneous conclusion of law. *Montgomery County v. Buckman,* 333 Md. 516, 519–20, 636 A.2d 448, 450 (1994); *People's Counsel v. Maryland Marine,* 316 Md. 491, 497, 560 A.2d 32, 34–35

---

1. Despite its name, the Maryland Tax Court is not a judicial body but rather is a statewide administrative agency. *Shipp v. Bevard,* 291 Md. 590, 592, 435 A.2d 1114, 1115 (1981).

(1989); *Ramsay, Scarlett & Co. v. Comptroller,* 302 Md. 825, 834, 490 A.2d 1296, 1301 (1985) ("a reviewing court is under no statutory constraints in reversing a Tax Court order which is premised solely upon an erroneous conclusion of law").

### III

In construing these statutes, we seek to ascertain and carry out the intent of the legislature. *Dean v. Pinder,* 312 Md. 154, 161, 538 A.2d 1184, 1188 (1988). To do so, we look to the plain meaning of the words used in the statute. *Kaczorowski v. City of Baltimore,* 309 Md. 505, 513, 525 A.2d 628, 632 (1987). Nevertheless, we consider not only the literal or usual meaning of the words, but also their meaning and effect in light of the setting, objectives and purpose of the enactment. *Id.* at 513–14, 525 A.2d at 632. In addition to the individual words used in a specific section, we also consider the enacted legislation as a whole. Hence we note that Title 12 of the Tax–Property Article, entitled "Recordation Taxes," represents a general statutory scheme, and therefore the sections within the title must be read and considered together to ascertain the true intention of the legislature. *See Blumenthal v. Clerk of Cir. Ct.,* 278 Md. 398, 403, 365 A.2d 279, 282 (1976) (predecessor statutes to those currently codified in Title 12 represent a general statutory scheme, and must be read together to ascertain the true legislative intent). With those principles in mind, we address the issue at hand.

Section 12–102 of the Tax–Property Article imposes a tax on instruments of writing recorded with the clerk of the circuit court of a county or Baltimore City. An "instrument of writing" is defined as including a written instrument that "creates or gives notice of a security interest in real property." § 12–101(c)(1). An instrument of writing specifically includes "a mortgage, deed of trust, or other contract that creates an encumbrance on real property." § 12–101(c)(2)(ii). The tax on deeds of trust is based on "the principal amount of the debt secured" by the deed of trust. § 12–103(a). Section 12–108(e), however, provides an exemption for supplemental instruments of writing. A supplemental instrument of writing is

not subject to recordation tax except to the extent that the amount of debt is increased by the supplemental instrument of writing. § 12–108(e)(2). "Supplemental instrument of writing" is defined in § 12–101(g) as follows:

"(g) *Supplemental instrument of writing.*—(1) 'Supplemental instrument of writing' means an instrument of writing that confirms, corrects, modifies, or supplements a previously recorded instrument of writing.

(2) 'Supplemental instrument of writing' includes an instrument of writing that secures a debt and grants a security interest in property in addition to or in substitution for property described in the previously recorded instrument of writing."

■ Brown contends that the Maryland deeds of trust are exempt from recordation tax as supplemental instruments of writing because they supplement the previously recorded instruments of writing recorded in Loudon County, Virginia. We disagree. In order for an instrument that creates a security interest to be exempt as a supplemental instrument, it must supplement an instrument creating a security interest previously recorded in the State of Maryland.

■ This has been the consistent interpretation of the supplemental instrument exemption by the Attorney General in advising the clerks of the circuit courts, acting as the collectors of the tax, since the recordation tax was first enacted by Chapter 11, § 4 of the Acts of 1937 (Special Session). 22 Op. Atty. General 725 (1937); 22 Op. Atty. General 727 (1937); 22 Op. Atty. General 733 (1937); 22 Op. Atty. General 766 (1937); 23 Op. Atty. General 573 (1938); 58 Op. Atty. General 792 (1973). The rationale of this interpretation is that it was not the intention of the Legislature to impose the recordation tax twice upon the same debt. That long standing interpretation is entitled to deference since the Legislature, presumably aware of that construction of the statute, has not amended it in any substantive manner. *Morris v. Prince George's County*, 319 Md. 597, 613, 573 A.2d 1346, 1354 (1990); *Balto. Gas & Elec. v. Public Serv. Comm'n,*

305 Md. 145, 161, 501 A.2d 1307, 1315 (1986). Where, as in the instant case, there was no Maryland recordation tax imposed upon the previously recorded instrument, there is no double taxation to be avoided.

The 1937 recordation tax was repealed and reenacted by Chapter 277, § 6 of the Acts of 1939. That statute provided express exemptions for supplemental instruments and previously recorded instruments that were being rerecorded, as follows:

"No tax shall be required for the recordation of any instrument securing a debt that merely confirms, corrects, modifies, or supplements an instrument previously recorded, or conveys or pledges property in addition to, or in substitution for the property originally conveyed or pledged, if such supplemental instrument does not increase the amount of the debt secured by the instrument previously recorded.

No tax shall be required for the recordation of any instrument, other than an instrument securing a debt, that merely confirms, corrects, modifies or supplements an instrument previously recorded, if there is no actual consideration paid or to be paid for the execution of such supplemental instrument.

Any instrument, or counterpart of any instrument, previously recorded may be recorded in any other county or in Baltimore City, or in more than one place in the records of a particular county or Baltimore City, without the payment of a tax."

That statutory language had not been amended and was codified as Md.Code (1957, 1980 Repl.Vol.) Article 81, § 277(h), (i) and (j) when code revision resulted in the enactment of the Tax–Property Article by Chapter 8 of the Acts of 1985. The revisor's note to § 12–108 of that Article explains that sub-sections (e) and (f) providing an exemption from the recordation tax for supplemental instruments and previously recorded instruments contain new language derived without substantive change from former Article 81, § 277(h), (i) and (j).

▆▆▆▆ We therefore hold that where no Maryland recordation tax has previously been paid, the recording of an instrument that supplements an instrument previously recorded outside this State does not qualify for the supplemental instrument exemption provided by § 12–108(e) of the Tax–Property Article. Thus, in the instant case, when the supplementary deeds of trust were recorded in Maryland on June 28, 1991, they created for the first time a security interest in the Prince George's County real estate to secure the loans previously made by Sovran to Brown and his related interests. The recordation tax is, *inter alia*, an excise on the privilege of using the recording offices of the clerks of the circuit courts for the purpose of perfecting such security interests. *Dean v. Pinder*, 312 Md. at 165, 538 A.2d at 1187; *Central Credit v. Comptroller*, 243 Md. 175, 182, 220 A.2d 568, 572 (1966); *Pittman v. Housing Authority*, 180 Md. 457, 462–63, 25 A.2d 466, 469 (1942).

In light of this interpretation of the law, we now examine each of the Maryland Deeds of Trust individually. Regarding the Maryland $2 Million Deed of Trust, we hold that this instrument does not qualify for the supplemental instrument exemption because there was no previously recorded instrument recorded among the land records of a Maryland county or Baltimore City. For the reasons discussed above, the Maryland $2 Million Deed of Trust does not qualify as a supplemental instrument of writing under § 12–101(g) because the instrument that it purports to supplement, the Virginia Indemnity Deed of Trust, was recorded in Virginia, but never in Maryland.

▆▆▆▆ We think it was error, however, for the Director of Finance to collect a recordation tax on the entire amount of debt secured where that debt is also secured by an encumbrance on property located in another state. Therefore, in determining the appropriate recordation tax for a deed of trust on Maryland property, securing a debt that is already secured by a deed of trust encumbering real property located

in a sister state, we look to § 12–105(a). That section provides in pertinent part:

"§ 12–105. Calculation of tax.

(a) *Property partly in the State.*—(1) For a deed, deed of trust, or mortgage transferring title to real property located partly in the State, the recordation tax applies to the consideration payable or the principal amount of the debt secured in the same ratio that the value of the real property that is located in the State bears to the value of the entire property."

Utilizing this formula, the recordation tax on the Maryland $2 Million Deed of Trust should have been imposed on only that portion of the principal debt secured bearing the same ratio that the value of the Maryland property bore to the combined value of the Maryland and Virginia properties.

Regarding the Maryland $4.5 Million Deed of Trust, we hold that this instrument also does not qualify for the supplemental instrument exemption because there was no previously recorded instrument recorded among the land records of a Maryland county or Baltimore City. The Virginia Indemnity Deed of Trust does not qualify as a previously recorded instrument because it was recorded in Virginia, but not in Maryland.[2] Under these circumstances, the recordation tax on the Maryland $4.5 Million Deed of Trust should have been computed in accordance with § 12–105(a).

No recordation tax on the Maryland $14 Million Indemnity Deed of Trust was assessed or collected because state recor-

---

**2.** Notwithstanding our holding that a previously recorded instrument must be recorded in Maryland, we reject Brown's argument for another reason as well. Although we have adopted his terminology for the purpose of this opinion, we find rather disingenuous the way in which Brown characterizes the Virginia deed of trust as the "previously" recorded instrument and the Maryland deed of trust as the "supplemental" instrument. The Maryland $4.5 Million Deed of Trust was recorded among the land records of Prince George's County on the same day that the Virginia $4.5 Million Deed of Trust was recorded among the land records of Loudon County, Virginia. Both of these deeds of trust secured the $4,505,000 loan made by Sovran on June 26, 1991, and were recorded on June 28, 1991.

dation tax is deferred on an indemnity instrument until a default occurs. *See* § 12–105(f). Because there has been no challenge to the propriety of deferring state recordation tax on an indemnity instrument until default occurs, we do not address that issue.

## IV

The county transfer tax provisions are found in Subtitle 10, Division 7 of the Prince George's County Code (1991). Section 10–188 imposes the transfer tax and provides for exemptions therefrom:

"(a) A tax is imposed at the rate of one and one-half percent (1½%), of actual consideration paid or to be paid under every instrument of writing conveying title to real property, or any interest therein, in the County, offered for record and recorded in the County. Conveyances to the State or any agency thereof or any political subdivision of the State shall not be subject to the tax imposed by this Section.

(b) In the case of a lease for a term of years, not perpetually renewable, the tax provided for in this Section shall be computed and be based upon the capitalization at ten percent (10%) of the average annual rent over the entire term of the lease, including any renewable term, plus the actual consideration other than rent paid or to be paid. Where the average annual rental cannot be determined or accurately estimated from the terms contained in the lease for payment thereof, the tax shall be based upon two (2) times the assessed value of the property described in the lease.

(c) The Director of Finance is designated the collecting officer in the County to collect the tax imposed by this Section.

(d) For the purposes of this Section, instrument of writing shall include deeds, mortgages, deeds of trust, leases, contracts and agreements, but shall not include purchase money mortgages, purchase money deeds of trust, assign-

ments of mortgages, or releases. Upon any refinancing of property by the original mortgagor or mortgagors the tax shall apply only to the consideration over and above the amount of the original mortgage or deed of trust. Any mortgage or deed of trust on a mortgagor's principal residence recorded after the recordation of a purchase money mortgage or purchase money deed of trust, where more than twelve months has elapsed since the recording of the prior mortgage or deed of trust, shall be exempt from the tax imposed by this Section.

(e) Taxes imposed by this Section shall be deferred or abated for not more than one hundred and eighty (180) days on the transfer of property to fulfill the terms of a valid listing agreement, subject to the following requirements and conditions:

(1) The party offering for record an instrument in writing transferring title as part of such listing agreement shall certify, in writing on said instrument, that the transfer of property is to fulfill the terms of a valid listing agreement between the grantor and grantee; that a valid contract has been entered into by the grantor for the purchase of another property; and that it is the intent to transfer all interest in such property to a third party within the same one hundred and eighty (180) days.

(2) There shall be no deferral or abatement of the tax imposed by this Section upon the conveyance of title or interest to a third party.

(3) Failure to offer for record an instrument in writing transferring title to the third party within the same one hundred and eighty (180) days shall result in a lien being placed on such property for the taxes otherwise required by this Section."

No provision explicitly or implicitly exempts supplemental instruments of writing from the transfer tax. There are, however, specific exemptions for many other types of instruments. *See* § 10–188(a). Had the Prince George's County Council intended to exempt from taxation supplemental instruments of writing, it certainly would have done so

explicitly when enacting this scheme of taxation containing many specific exemptions. *See Hammond v. Phila. Elec. Pwr. Co.*, 192 Md. 179, 186–87, 63 A.2d 759, 762–63 (1949) ("The taxing power is never presumed to be surrendered, and therefore every assertion that it has been relinquished must, to be efficacious, be distinctly supported by clear and unambiguous legislative enactment. To doubt is to deny an exemption.") Hence, in the instant case, collection of county transfer tax on the Maryland deeds of trust was proper. The tax, however, should have been computed in accordance with § 10–190(b) of the Prince George's County Code. That section provides:

> "(b) Upon deeds of trust or mortgages conveying property lying partly within and partly without the County, the tax shall apply only to such proportion of the debt secured as the value of the property within the County bears to the value of the whole property conveyed."

Hence, the county transfer tax on the Maryland $2 Million Deed of Trust and the Maryland $4.5 Million Deed of Trust should have been imposed on the proportion that the value of the Prince George's property bore to the value of the Maryland and Virginia properties combined.

 Finally, collection of county transfer tax on the Maryland $14 Million Indemnity Deed of Trust was proper because the Prince George's County Code provides no exemption for indemnity deeds of trust or other guarantee instruments. The County also was correct in basing the tax on the $12,000,000 secured by the Maryland indemnity deed of trust. The County erred, however, in taxing the entire $12,000,000. The tax should have been computed in accordance with § 10–190(b) of the Prince George's County Code, resulting in a tax on the "proportion of the debt secured as the value of the property within the County bears to the value of the whole property conveyed."

## V

Brown filed a cross appeal, asserting that he was denied interest at six percent per annum on the amount of the refund

due him from the date that the taxes were paid. He is correct. Md.Code (1986) § 14–917 of the Tax–Property Article. On remand the Maryland Tax Court shall compute the amount of interest due Brown on the refunds which it decides should be made to him.

*AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY WITH DIRECTIONS TO REMAND THE CASE TO THE MARYLAND TAX COURT FOR FURTHER PROCEEDINGS TO DETERMINE THE VALUES OF THE MARYLAND AND VIRGINIA PROPERTIES, TO COMPUTE THE APPROPRIATE STATE AND COUNTY TAXES, AND TO DETERMINE THE AMOUNT OF REFUND OF STATE AND COUNTY TAXES DUE APPELLEE. COSTS TO BE PAID ONE–THIRD BY APPELLANT AND TWO–THIRDS BY APPELLEE.*