994 A.2d 495

**Sandro BAIZA**

v.

**CITY OF COLLEGE PARK.**

No. 02690, Sept. Term, 2008.

Court of Special Appeals of Maryland.

May 6, 2010.

322

Benjamin J. Woolery (Law Offices of McGill & Woolery, Alphonso S. Hearns, on the brief), Upper Marlboro, MD for Appellant.

Suellen M. Ferguson (Council, Baradel, Kosmerl & Nolan, PA, on the brief), Annapolis, MD for Appellee.

Panel: DEBORAH S. EYLER, WOODWARD and IRMA S. RAKER (Retired, specially assigned), JJ.

IRMA S. RAKER, Judge (Retired, specially assigned).

This case involves a building permit erroneously issued by the City of College Park, appellee, to Sandro Baiza, appellant, for improvements to his house located within the City limits. After the College Park Director of Public Services revoked the building permit, appellant filed a request for "validation" of the improperly issued building permit, pursuant to College Park City Code, § 87-24.[1] The City Council of College Park denied appellant's request for validation by Council Resolution 08-R-07 and appellant then filed a petition for judicial review in the Circuit Court for Prince George's County. The circuit court affirmed. Because we shall hold that the City Council applied the wrong standard in considering appellant's validation request, we shall reverse and remand for further consideration under the appropriate standard.

## I.

Municipalities in Prince George's County are authorized "by ordinance, for the purpose of the preservation, improvement, or protection of the general character and design of lands and improvements within the corporate limits of the municipality, [to] impose stricter ... conditions, restrictions or limitations upon fences," than those imposed by Prince George's County, so long as the ordinance is approved by the County Council

---

1. Unless otherwise indicated, all subsequent statutory references herein shall be to the College Park City Code (2007), Chapter 87, Building Construction.

for Prince George's County. *See* Md.Code, Art. 28 (1957, 2003 Repl.Vol., 2008 Cum.Supp.), § 8–112.1. In October, 2005, the Mayor and Council of College Park enacted a fence ordinance, § 87–23, which was approved, as required, by the County Council.

Section 87–23 prohibits the construction of front yard fences. Section 87–23.B. provides that, "[e]xcept as hereinafter provided, fences shall not be constructed or reconstructed in a front yard." Section 87–23.E. provides that retaining walls "built to retain or support the lateral pressure of earth or water or other superimposed load and otherwise designed and constructed of appropriate materials within allowable stresses and in conformance with acceptable engineering practices may be constructed where necessary in the front, side or rear yard, but shall not extend more than one foot above finished grade." Section 87.23.K.[2] sets out an appeal procedure from the denial of a permit, which in essence is a variance procedure.[3]

---

**2.** § 87.23.K., Appeals, provides as follows:

(1) The Advisory Planning Commission shall apply the following criteria to any appeal arising from the provisions of this section: (a) There is an extraordinary situation or condition that would support the request for a variance;
(b) Denial of the variance would result in a peculiar and unusual practical difficulty to, or an exceptional or undue hardship to the owner;
(c) Granting the variance will not impair the intent, purpose or integrity of the Fence Ordinance;
(d) The variance is consistent with the design guidelines adopted for the Historic District, if applicable;
(e) The variance will not adversely affect the public health, safety, welfare or comfort;
(f) The fence for which a variance is requested incorporates openness and visibility as much as is practicable; provided, however, that it shall not be constructed of chain link unless this material is consistent with the surrounding neighborhood; and
(g) The proposed construction, including setbacks, is characteristic of and consistent with the surrounding neighborhood. In neighborhoods where chain link is a characteristic material, alternate materials incorporating openness and visibility, may be permitted.

**3.** A variance has been described as "administrative relief which may be granted from the strict application of a particular development limita-

The City Code contains a provision for the validation of a permit incorrectly or improperly granted, which was enacted in March of 2007. *See* § 87–24. It is initiated by the permittee applying for validation with the Department of Public Services within 30 days after notice revoking the building permit. The Code sets forth the criteria for approval as follows:

"(1) the application for validation may be approved if:

(a) No fraud or misrepresentation had been practiced in obtaining the permit;

(b) At the time of the permit's issuance, no appeal or controversy regarding its issuance was pending before any body;

(c) The applicant has acted in good faith, expending funds or incurring obligations in reliance on the permit; and

(d) The validation will not be against the public interest."

§ 87–24.H.

## II.

In 2006, appellant applied to both the Maryland National Capital Park and Planning Commission and the City of College Park for a permit to build a retaining wall around his College Park home. A permit from the City was required because his property is situated within the limits of College Park. The City issued City Building Permit 1640 (hereinafter Permit), on September 22, 2006, but did so in error. The parties agree that a then-new city ordinance, § 87–23, effective October 19, 2005, prohibited front yard retaining walls except under limited circumstances, and that the Permit was issued without the required approval of the Advisory Planning Commission (hereinafter APC). Appellant's proposed retaining wall facially violated this new ordinance, but he was issued the Permit without the required showing that the retaining

tion in the zoning ordinance (i.e., setback, area and height limitations, etc.)." *Mayor & Council of Rockville v. Rylyns Enters., Inc.,* 372 Md. 514, 537, 814 A.2d 469, 482 (2002) (quoting STANLEY D. ABRAMS, GUIDE TO MARYLAND ZONING DECISIONS § 11.1 (3d ed. 1992)).

wall was necessary "to retain or support the lateral pressure of earth or water or other superimposed load ... and was to be constructed of appropriate materials within allowable stresses and in conformance with acceptable engineering practices." § 87–23.E.

After having been issued the Permit by the City, appellant spent approximately $17,000 to construct a retaining wall on his property. In addition, appellant added pillars to the top of the retaining wall, which were not authorized by the Permit. Appellant's neighbors objected to his project, and the City issued a stop work order on October 26, 2006.

In response to the stop work order, appellant applied for a second building permit and filed a variance application to construct a thirty-four inch picket fence, and did not address the basic retaining wall. At about the same time as appellant filed for a variance, it came to the City's attention that appellant had built the wall approximately three feet beyond the building restriction line, within the City right of way.

The Director of Public Services issued appellant a notice of revocation of Permit 1640, and the City revoked the Permit, on May 9, 2007. Appellant applied for validation of the wrongly issued Permit under § 87–24, and the City Council denied this request on April 8, 2008. Although the City did not dispute the first three requirements for validation set forth in § 87–24.H., the City denied appellant validation on the basis of the fourth prong, *i.e.*, that validating the Permit would be "inconsistent with the public interest."

In considering the "public interest" prong of § 87–24, the City found facts, including that the necessity of the retaining wall had not been demonstrated, and that some residents of the surrounding neighborhood were displeased by appellant's project. The City reasoned as follows:

"2.4. The Validation would not be against the public interest. That portion of the fence in the City's right of way is not permitted, and must be removed. Pursuant to the Fence Ordinance, a retaining wall is *permitted by variance in the front yard only when necessary* to retain or support

lateral pressure of earth or water or other superimposed load when otherwise designed and to be constructed of appropriate materials within allowable stresses and in conformance with acceptable engineering practices. This was not demonstrated by the weight of the evidence. In addition, *while the Applicant was given the opportunity to demonstrate that existing conditions now require a retaining wall, he has not done so.* In fact, the record demonstrates that a retaining wall is not required, as per the City's Engineer. Further, there is some evidence that the wall as constructed is not sound. The Mayor and Council have already determined that a retaining wall in the front yard is not in the public interest unless it fulfills the stated criteria. The criteria have not been fulfilled."

(Emphasis added.) It is apparent from Resolution 2.4 that the City focused on the necessity of appellant's project in considering whether it was consistent with the public interest.

In May of 2008, appellant filed in the Circuit Court for Prince George's County a petition for judicial review of the denial of his application for a validation, arguing that the City had rendered § 87–24 meaningless by interpreting the public interest as offended whenever an improper permit has been issued and the grounds for a variance have not been met. Appellant did not contest the City's finding that his three-foot incursion into the City's right-of-way must be removed. In court, the following discussion of the construction of § 87–24 transpired:

[APPELLANT'S COUNSEL]: To follow ... counsel for the City's logic, then every time the City issues a permit in error, no one is ever going to be able to use the specific provision that this gentleman came under Section 87–24, validation of permit incorrectly or improperly granted. So what counsel for the City and what the Court is heading towards, I'm afraid, is saying that that section is meaningless.

[THE COURT]: I think that section means if we gave you a permit to do something you were otherwise permitted to do, but you know, were mistaken as to the size or we were

mistaken as to the location. [Appellee's Counsel], can you give me an example of that for [Appellant's Counsel]?

[APPELLEE'S COUNSEL]: Certainly, your honor.... There are any number of things where yes, staff could allow too many feet, too close to the neighbor, too that or this; where once they constructed it, then it wasn't anything that was disallowed, it was just, it went too far. They mismeasured, they miscalculated. And we have had that happen before. But this is a totally different situation because this is not a legal item from the beginning, right.

\* \* \*

[THE COURT]: Alright. I am going to affirm the resolution of the City of College Park. And I'm going to affirm it for this reason. The City of College Park issued the Petitioner a permit to build a fence along the front and the western side of his property. This was clearly not just a mistake, I mean, it was a huge mistake. Since city ordinances no longer allow fences to be built in the front yards, this is something that is simply not permitted.

The petitioner received a stop work order. He sought validation of the permits. The city's resolution denied validation of the permit stating that validation will not be against the public interest, that he failed to comply with that fourth prong for validating permits requiring a finding of validation will not be against the public interest. *And the evidence was that ample testimony was provided by residents that the wall was unnecessary.* It was not typical of the neighborhood. That the neighborhood prides itself on open green spaces.

My decision is based really on a couple of things; obviously my review of an administrative agency's decision is narrow ... secondly, *I think there is substantial evidence in the record, through findings, that there was no need for a retaining wall,* and through the neighbors' complaints that the City's decision to deny validation was reasonable, and therefore I'm going to affirm the resolution by the City of College Park.

(Emphasis added.) Like the City, the circuit court focused on the necessity of appellant's project in reviewing the City's public interest inquiry.

Appellant presents two questions for our review. First, was the denial of the validation request consistent with Maryland law? And second, was the failure to meet the fourth requirement of the test for validation, that the project not contravene the public interest, a sufficient basis for denial?

## III.

Appellant's primary argument is that the City Council failed to consider granting relief to him for the erroneously issued Permit under the correct provision of the City Code, § 87–24, and improperly considered his petition under § 87–23.K., the variance section. He restates his argument as follows: "I was not supposed to get this but I did get it from the government through no fault of my own and I've expended a significant sum of money in reliance on the Permit." This argument, he maintains, is different from a variance argument, and the APC should have considered that argument, particularly in light of prong four of the validation ordinance, i.e., whether it was against the public interest that the Permit should now be validated. He argues also that he had a vested right in the Permit issued by the City.

Appellee argues that the City considered the proper factors when it evaluated appellant's validation request and did not misapply variance considerations to the consideration of whether the Permit should be validated. The City argues that at this time appellant was given the opportunity to argue and present evidence before the APC that the retaining wall was necessary, and that he did not do so. That, in the eyes of the City, is sufficient reason to find that it is not in the public interest to validate the Permit. The City concludes with the argument that "[t]he failure to obtain a variance from the APC to allow for the issuance of a permit was then not merely a technical failure, or a mistake in measurement or placement. It was a matter that went to the heart of the public interest

and the basis for the law in the first place." Appellee further argues that the City's determination under Resolution 2.4 that appellant's Permit did not comport with the public interest, was proper.

## IV.

This case is a petition for judicial review, and not an appeal. The City's Resolution 2.4 is an agency determination. Review by courts of decisions of administrative agencies is very narrow. *See Maryland–National Capital Park & Planning Comm. v. Greater Baden–Aquasco Citizens Assoc.,* 412 Md. 73, 83–84, 985 A.2d 1160, 1166 (2009) (describing the deferential review standards applied to agency determinations of fact and law); *see also United Parcel Service, Inc. v. People's Counsel for Baltimore County,* 336 Md. 569, 576, 650 A.2d 226, 230 (1994) (stating that "[j]udicial review of administrative agency action is narrow."); *Ad + Soil, Inc. v. County Comm'rs of Queen Anne's County,* 307 Md. 307, 338, 513 A.2d 893, 909 (1986) (stating that "the order of an administrative agency, such as a county zoning board, must be upheld on review if it is not premised upon an error of law and if the agency's conclusions 'reasonably may be based upon the facts proven.' ").

Our review of the decision of an administrative agency "entails only an appraisal and evaluation of the agency's fact finding and not an independent decision on the evidence." *Catonsville Nursing Home, Inc. v. Loveman,* 349 Md. 560, 569, 709 A.2d 749, 753 (1998). When the agency is acting in a fact-finding or quasi-judicial capacity, we review its decision to determine "whether the contested decision was rendered in an illegal, arbitrary, capricious, oppressive or fraudulent manner." *Dep't of Natural Resources v. Linchester Sand & Gravel Corp.,* 274 Md. 211, 224, 334 A.2d 514, 523 (1975); *Johnson v.Crim. Injuries Comp. Bd.,* 145 Md.App. 96, 107, 801 A.2d 1092, 1099 (2002).

In reviewing the agency's decision, we apply the substantial evidence test to the final decisions of the adminis-

trative agency, seeking to determine "'whether a reasoning mind reasonably could have reached the factual conclusion the agency reached.'" *Maryland Aviation Admin. v. Noland,* 386 Md. 556, 571, 873 A.2d 1145, 1154 (2005) (quoting *Bd. of Physician Quality Assurance v. Banks,* 354 Md. 59, 67–69, 729 A.2d 376, 380–81 (1999)); *Singley v. County Comm'rs of Frederick County,* 178 Md.App. 658, 675, 943 A.2d 636, 646 (2008). A court's role is "'limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.'" *Grasslands Plantation, Inc. v. Frizz–King Enters., LLC,* 410 Md. 191, 203, 978 A.2d 622, 629 (2009) (quoting *United Parcel Service, Inc. v. People's Counsel,* 336 Md. at 576–77, 650 A.2d at 230). In other words, "[t]he court may not substitute its judgment on the question whether the inference drawn is the right one or whether a different inference would be better supported." *Layton v. Howard County Bd. of Appeals,* 399 Md. 36, 49, 922 A.2d 576, 583 (2007).

Our standard of review as to an agency's legal conclusions is less deferential. *See People's Counsel for Baltimore County v. Surina,* 400 Md. 662, 682, 929 A.2d 899, 911 (2007) (stating that "[w]e are less deferential in our review ... of the legal conclusions of the administrative body and may reverse those decisions where [its] legal conclusions ... are based on an erroneous interpretation or application of the zoning statutes, regulations, and ordinances."); *Prince George's County v. Brown,* 334 Md. 650, 658, 640 A.2d 1142, 1146 (1994) (stating that "[a] reviewing court is under no constraints in reversing an administrative decision that is premised solely upon an erroneous conclusion of law....."). Judge Glenn T. Harrell, Jr., writing for the Court of Appeals in *People's Counsel for Baltimore County v. Loyola College in Maryland,* 406 Md. 54, 68, 956 A.2d 166, 174 (2008), reiterated the standard of review for conclusions of administrative agency's decision when that decision is premised upon an error of law, stating as follows:

" 'Generally, a decision of an administrative agency, including a local zoning board, is owed no deference when its conclusions are based upon an error of law.' *Belvoir Farms Homeowners Ass'n, Inc. v. North,* 355 Md. 259, 267–68, 734 A.2d 227, 232 (1999). Thus, the Board of Appeals's legal conclusions, if erroneous, are entitled to no deference."

■ Where a court determines that an agency has decided a matter using the wrong legal standard, ordinarily it does not decide the issue itself, but rather remands to the agency for reconsideration in light of the court's holding. The Court of Appeals has explained as follows:

"[I]f an administrative function remains to be performed after a reviewing court has determined that an administrative agency has made an error of law, the court ordinarily may not modify the agency order. Under such circumstances, the court should remand the matter to the administrative agency without modification...."

*O'Donnell v. Bassler,* 289 Md. 501, 509, 425 A.2d 1003, 1008 (1981); *see also Belvoir Farms Homeowners Ass'n, Inc. v. North,* 355 Md. at 272–73, 734 A.2d at 234 (stating that "ordinarily, courts cannot either grant or deny variances. [Rather, their proper role is usually confined to] remand[ing] the matter to the agency for further consideration using the proper standard.").

V.

■ We turn first to appellant's vested rights argument. Appellant's vested right argument fails. The essence of appellant's argument, citing 9A McQuillin, Municipal Corporations, § 26:213, p. 233 (3d ed. 2000), is that "where a property owner performs substantial work and incurs substantial liabilities in good faith reliance upon a permit issued by a municipality, the owner may acquire a vested right to complete the construction in accordance with the terms of the permit...." He misconstrues the doctrine of vested rights.

■ One basic requirement for a vested right is that a lawful permit was obtained. *See Maryland Reclamation As-*

*sociates, Inc. v. Harford County,* 414 Md. 1, 994 A.2d 842, 2010 WL 1904818 (2010) (noting that in order to obtain a vested right in an existing zoning use, a property owner must initially obtain a valid permit); *Marzullo v. Kahl,* 366 Md. 158, 191, 783 A.2d 169, 188 (2001) (stating that the first requirement to obtain a vested right is that the claimant has a valid permit); *Rockville Fuel & Feed Co. v. Gaithersburg,* 266 Md. 117, 127, 291 A.2d 672, 677 (1972) (stating that "a 'vested right' could only result when a lawful permit was obtained and the owner, in good faith, has proceeded with such construction under it. . . ."). The doctrine of vested rights has a constitutional foundation, and "rests upon the legal theory that when a property owner *obtains a lawful building permit,* commences to build in good faith, and completes substantial construction on the property, his right to complete and use that structure cannot be affected by any subsequent change of the applicable building or zoning regulations." *Prince George's County v. Sunrise Dev. Ltd. P'ship,* 330 Md. 297, 312, 623 A.2d 1296, 1304 (1993) (emphasis added); *see also Town of Sykesville v. West Shore Communs.,* 110 Md.App. 300, 316, 677 A.2d 102, 111 (1996); *Prince George's County v. Equitable Trust Co., Inc.,* 44 Md.App. 272, 278, 408 A.2d 737, 741 (1979). Appellant never had a lawfully issued building permit and he does not claim he ever had one. Accordingly, he never had a vested right in the improperly issued building Permit.

 Appellant does not argue "zoning estoppel," except to say in his brief that appellee relied on equitable estoppel cases in the circuit court, and those cases "could provide Mr. Baiza with relief were he to need it here, and yet he has the specific remedy under § 87–24 for his 'permit issued in error' as this 'validation' process is termed under typical county codes." Appellant's Br. at 17. Zoning estoppel "is the theory of equitable estoppel[4] applied in the context of zoning dis-

---

4. In *Sycamore Realty v. People's Counsel of Baltimore,* 344 Md. 57, 63, 684 A.2d 1331, 1334 (1996), referencing the definition of equitable estoppel from 3 J. POMEROY, EQUITY JURISPRUDENCE, § 804 (5th ed. 1941), we defined equitable estoppel as follows:

putes." *Sycamore Realty Co., Inc. v. People's Counsel of Baltimore County*, 344 Md. at 63, 684 A.2d. at 1334; *see also Maryland Reclamation Associates*, 414 Md. 1, 994 A.2d 842. As for the doctrine of zoning estoppel, the Court of Appeals stated clearly in *Sycamore* as follows:

> "We have never adopted *zoning* estoppel in Maryland. Instead, we, like all of the other courts that have declined to adopt zoning estoppel 'recognize a legal defense cast in terms of whether the property owner acquired 'vested rights' to use his land without governmental interference.' David G. Heeter, *Zoning Estoppel, Application of the Principles of Equitable Estoppel and Vested Rights to Zoning Disputes*, URB. L. ANN. 63, 64 (1971)."

*Id.* at 66–67, 684 A.2d at 1336. Again, in *Marzullo v. Kahl*, 366 Md. 158, 783 A.2d 169, the Court of Appeals declined to adopt zoning estoppel in Maryland, reiterating as follows:

> "While we are sympathetic to the plight in which respondent has found himself, we hold that the county is not estopped from enforcing the BCZR as it was applied by the Board of Appeals. We have held, generally, that permits that have been issued that are in violation of the zoning ordinances are unlawful and cannot be grounds for estopping a municipality from the enforcement of the ordinance. We stated in *Lipsitz [v. Parr*, 164 Md. 222, 227, 164 A. 743, 746 (1933)]* that 'the doctrine of equitable estoppel cannot be here invoked to defeat the municipality in the enforcement of its ordinances, because of an error or mistake committed by one of its officers or agents which has been relied on by the third party to his detriment.' "

*Id.* at 199, 783 A.2d at 193 (internal citations omitted). *But see Permanent Fin. Corp. v. Montgomery County*, 308 Md.

---

"[T]he effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which may have otherwise existed, either of property, of contract or of remedy, against another person who has in good faith relied upon such conduct and has been led thereby to change his position for the worse, and who on his part acquired some corresponding right either of property, of contract or of remedy."

239, 257–58, 518 A.2d 123, 132 (1986) (estopping Montgomery County from preventing construction under a validly issued permit, on the grounds that the county's ordinance was ambiguous, that the project was consistent with the county's long-standing interpretation of the ordinance, and that all other prongs of estoppel were satisfied).

The Court of Appeals discussed the doctrine of zoning estoppel with a more favorable attitude in *Maryland Reclamation Associates v. Harford County*, 414 Md. 1, 994 A.2d 842, stating as follows:

"We have not explicitly adopted the doctrine of zoning estoppel, but we recognize that as zoning and permitting processes become more complex, the need for such a doctrine grows. Today, land use is much more highly regulated than it was fifty years ago-environmental concerns abound, and vehicular traffic demands seem to mushroom every year. Thus a property owner who seeks to build or develop may well incur sizable expenses for experts in engineering, various environmental fields, traffic flow, archaeology, etc., before putting a spade into the ground.

\* \* \*

But we also cannot ignore a local government's responsibility to its residents, and thus, Maryland courts should not apply the doctrine casually."

*Id.* at 56–57, 994 A.2d at 875, 2010 WL 1904818 at \*29, \*30. The Court of Appeals further stated that "there may be situations in which the developer's good faith reliance on government action in the pre-construction stage is so extensive and expensive that zoning estoppel is an appropriate doctrine to apply." *Id.* at 57, 994 A.2d at 875, 2010 WL 1904818 at \*30. The Court nonetheless "stopp[ed] short of adopting zoning estoppel," because it found that the petitioner had not demonstrated the requisite substantial reliance element. *Id.* at 57, 994 A.2d at 875, 2010 WL 1904818 at \*30. The dissent, written by Judge Glenn T. Harrell, Jr., joined by Chief Judge Bell, recommended as follows:

"The doctrine of vested rights, as applied in Maryland, and zoning estoppel ... are not, in my opinion, mutually exclusive or incompatible. The two doctrines may exist in tandem or apply to different types of situations.

* * *

The present case is a strong example of the necessity of the doctrine of zoning estoppel in Maryland to protect property owners and others who rely on the affirmative assurances of local government. Thus, I disagree with the Majority opinion and would hold, in reversing the judgment of the Circuit Court for Harford County, that (1) the doctrine of zoning estoppel ... is viable in Maryland; and (2) under the principles of zoning estoppel, [the petitioner should prevail]."

*Id.* at 87–88, 994 A.2d at 893–94, 2010 WL 1904818 at *45 (Harrell, J., dissenting).

■ Although the Court of Appeals showed perhaps a receptivity to the doctrine of zoning estoppel, it was explicit in urging discretion in its application, stating that "zoning estoppel must be applied, if at all, sparingly and with the utmost caution." *Id.* at 58, 994 A.2d at 876, 2010 WL 1904818 at *30. It seems safe to say that until the Court of Appeals speaks on the issue again, the rule to be followed in this State is that ordinarily, the doctrine of zoning estoppel does not apply to the acts of public officials, public agencies and municipalities, and that very exceptional circumstances are required to invoke the doctrine against the State and its governmental subdivisions. Consequently, zoning estoppel will not apply in appellant's case.

Although the vested rights and zoning estoppel doctrines do not aid appellant, recognizing perhaps that mistakes happen, the City of College Park has provided a mechanism in § 87–24, Validation of improperly issued permits, to alleviate the hardship a party may incur as a result of an error. The section is as close to equitable estoppel as it could get, requiring no fraud, good faith, substantial expenditures, and no harm to the public interest. It seems that § 87–24, in creating a validation procedure, provided the zoning commis-

sion—the APC—with the legal power to impose a remedy akin to equitable estoppel. It empowered the APC to grant this remedy even where a variance would not apply because the initial permit was issued in error, if validation is not against the public interest and the permittee satisfies the § 87–24.H. requirements, which are good faith reliance and expenditure of funds. What § 87–24 created was a provision for validation of improperly issued permits which accounts for factors that the variance provision does not consider. For example, under the validation section, a permittee relies upon a governmentally-issued permit, whereas under the appeal procedure, no permit has been previously issued. Good faith reliance, therefore, is a requirement under § 87–24, but is not necessary under § 87.23.K., appeal. Section 87–24 vested the APC with equitable powers, which, without the specific provision, it would lack.

Because the doctrines of vested zoning rights and zoning estoppel are not applicable here, this case devolves to a review of the agency's decision, under its Resolution 2.4, to find that appellant's project was "against the 'public interest,' " and that therefore, no validation could be granted for his improperly issued Permit.

■ We turn now to appellant's better argument: that the APC analyzed his validation application under inapplicable considerations. With this argument, we agree. By ignoring § 87–24, the validation section, the APC has in effect abolished the application and provision for validation of an erroneously issued permit and eliminated the zoning commission's power to effect relief, leaving only relief in the form of a variance. This is clearly an error of law.

The APC Resolution sets forth the recommended ruling and findings of fact. A reading of that resolution makes clear that the APC considered appellant's Validation Petition under the factors set forth in § 87–23, and the neighbors' testimony went primarily to the necessity of the retaining wall, with the exception of Bruce Simpson and Anna Owens, who also testified that the wall was out of character with the neighborhood. Section 87–24.H. of the City Code provides for validation of an improperly issued permit if the first three prongs have been

satisfied, and if subsection (d), requiring that the validation not be against the public interest, is satisfied. In this case, all parties agree that the fourth prong, (d), is the only issue.

Section 87–24, "Validation of permit incorrectly or improperly granted," does not contain a definition of the term "public interest." It was by no means inappropriate for the City to consider the testimony of neighbors when conducting this inquiry into the public interest. *See, e.g., Dade County v. Section 11 Property Corp.*, 719 So.2d 1204, 1205 (Fla.Dist.Ct. App.1998) (reversing the lower court and holding that adverse neighbor testimony was a sufficient basis for denying a special exception to which the permit applicant was "entitled unless the zoning authorities determine that the use would adversely affect the public interest...."); *Bd. of Adjustment v. Ruble,* 193 N.W.2d 497, 506 (Iowa 1972) (citing precedent from several sister jurisdictions to support the proposition that "[i]n variance cases, 'public interest' has before been interpreted to be that interest of owners and occupants of neighboring properties."); *Rosewood Home Builders, Inc. v. Zoning Bd. of Appeals,* 17 A.D.3d 962, 794 N.Y.S.2d 152, 154 (2005) (recounting that "evidence of the obvious aesthetic impact of the nonconforming structure was presented in the statements of objecting neighbors ... and it cannot be said that the negative aesthetic impact of the nonconforming structure ... is not a public interest....").

In making the public interest determination, however, the City's analysis centered around elements relevant to a different section, 87–23.E., prescribing when a permit will issue for a retaining wall. That section states in relevant part:

"Retaining walls built to retain or support the lateral pressure of earth or water or other superimposed load and otherwise designed and constructed of appropriate materials within allowable stresses and in conformance with acceptable engineering practices may be constructed where necessary."

Resolution 2.4 reads in relevant part:

"Pursuant to the Fence Ordinance, a retaining wall is permitted by variance in the front yard only when necessary

to retain or support lateral pressure of earth or water or other superimposed load when otherwise designed and to be constructed of appropriate materials within allowable stresses and in conformance with acceptable engineering practices.... In addition, while the Applicant was given the opportunity to demonstrate that existing conditions now require a retaining wall, he has not done so. In fact, the record demonstrates that a retaining wall is not required...."

It is evident that the City relied heavily on the criteria used to determine whether a permit would have been issued in the first instance, the necessity for the fence, and whether to grant a variance, in making its public interest determination.

In *Anne Arundel County v. Halle Dev., Inc.*, 408 Md. 539, 971 A.2d 214 (2009), Judge Sally D. Adkins, writing for the Court of Appeals, discussed the role of courts in reviewing decisions of administrative agencies, explaining as follows:

"We distinguished the quasi-judicial authority of administrative agencies 'from the exercising of the 'judicial powers' of this State, which by Section I, Article IV of the Maryland Constitution is reserved exclusively to designated courts' and indicated that courts have an inherent power to review administrative agency decisions:

'While administrative agencies, in the proper performance of duties which the Legislature permissibly delegates to them, may use discretion to formulate policy, promulgate rules and adjudicate in order to determine specific questions of fact, they, nevertheless, in doing so are performing nonjudicial functions; on the other hand, the role of the courts in regard to these administrative agency functions is to see that these responsibilities were properly empowered to the agency and have been performed within the confines of the traditional standards of procedural and substantive fair play. In order to perform this essential duty, the courts may be provided with specific author-

ization to do so by the Legislature through statutory provision, but, even absent such authority, the judiciary has an undeniable constitutionally-inherent power to review, within limits, the decisions of these administrative agencies.

[*Linchester Sand & Gravel Corp.*, 274 Md.] at 222–23, 334 A.2d at 522–23. 'This power of review, whether authorized by statute or assumed inherently, cannot be a substitution of the court's judgment for that of the agency' and is limited to determining whether the contested quasi-judicial decision 'was rendered in an illegal, arbitrary, capricious, oppressive or fraudulent manner.' *Id.* at 224, 334 A.2d at 523.

In *Belvoir Farms*, we discussed the role of a reviewing court when confronted with an agency conclusion based upon an error of law. There, the Circuit Court properly concluded that the agency applied the wrong legal standard in granting a critical area zoning variance, but erred in reversing the decision without a remand to the agency. We explained: 'Generally, when an administrative agency utilizes an erroneous standard and some evidence exists, however minimal, that could be considered appropriately under the correct standard, the case should be remanded so the agency can reconsider the evidence using the correct standard. *Belvoir Farms*, 355 Md. at 270, 734 A.2d at 234. The reviewing court must remand the matter so that it will not usurp an administrative function:

'It is a fundamental principle of administrative law that a reviewing court should not substitute its judgment for the expertise of the administrative agency from which the appeal is taken. This principle underlies the rule that if an administrative function remains to be performed after a reviewing court has determined that an administrative agency has made an error of law, the court ordinarily may not modify the agency order. Under such circumstances, the court should remand the matter to the administrative agency without modification[.] . . . Finally, if an admin-

istrative function remains to be performed, a reviewing court may not modify the administrative agency's action even when a statute provides that the court may 'affirm, modify or set aside' because a court may not usurp administrative functions.' "

*Id.* at 556–57, 971 A.2d 214, 224–25.

Accordingly, we hold that the APC did not evaluate appellant's petition for validation under the proper standards as required under § 87–24, and particularly whether validation of the Permit would be against the public interest. Applying the correct standard for validation of the Permit, in the first instance, is the job of the agency, and not of the courts. *See Belvoir Farms Homeowners Ass'n, Inc. v. North*, 355 Md. at 270, 734 A.2d at 234 (noting that "[g]enerally, when an administrative agency utilizes an erroneous standard and some evidence exists, however minimal, that could be considered appropriately under the correct standard, the case should be remanded so the agency can reconsider the evidence using the correct standard.").

*JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE DECISION OF THE CITY OF COLLEGE PARK AND TO REMAND TO THE ADVISORY PLANNING COMMISSION FOR FURTHER CONSIDERATION CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.*